**Guennadi Y. MIKHAILEVITCH,
Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 97–3536.

United States Court of Appeals,
Sixth Circuit.

Submitted April 22, 1998.

Decided June 8, 1998.

George P. Mann (briefed), Farmington Hills, MI, for Petitioner.

Richard M. Evans (briefed), Michelle R. Slack (briefed), U.S. Department of Justice, Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: GUY, GILMAN, and GODBOLD*, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Guennadi Y. Mikhailevitch ("Mikhailevitch") petitions for review of an order rendered by the Board of Immigration Appeals (the "Board") denying his application for asylum and withholding of deportation. For the reasons set forth below, we **DENY** Mikhailevitch's petition for review.

## I. BACKGROUND

Mikhailevitch is a native and citizen of Belarus (a former republic of the Soviet Union) and a member of the Roman Catholic Church. In December of 1991, Mikhailevitch entered the United States by way of a nonimmigrant visitor's visa that expired on June 27, 1992. He settled in Oak Park, Michigan, where he has since resided. In February of 1995, the Immigration and Naturalization Service (the "INS") charged Mikhailevitch as deportable for remaining in the United States beyond the expiration of his visa without authorization. Mikhailevitch, through counsel, conceded his deportability on the basis charged. To avoid actual deportation, however, he subsequently filed an application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. §§ 1158(a) and 1253(h) (1994) ("the Application"). On the Application form, he stated in part as follows:

> I was persecuted by the security police and before the KGB, and they detained, interrogated and threatened me many times ... My father is Russian and Eastern Orthodox catholic [sic] and my mother is Byelorussian and Roman Catholic. They were persecuted because of their mixed background. My mother has always been very religious and so were her parents and her brothers. They suffered persecution because they are Roman Catholic. Because of my religious beliefs and activities,

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

the KGB, and later after the government changed in the former Soviet Union, the Security Police, have detained, harassed, interrogated and threatened me.

Mikhailevitch further stated in the Application that if he returned to Belarus, he "would suffer [harassment], threats, detention and interrogation by the government authorities and the police. They would put me in prison and [my] life would be in danger." In an affidavit filed in support of the Application, Mikhailevitch set forth various instances of purported persecution which he suffered while living in Belarus, including the following: (1) his father and paternal grandfather were deported to Siberia during Stalin's regime "because they were wealthy farmers and they refused to give up their farming equipment[,]" (2) the KGB interrogated him and threatened him on several occasions regarding his religious activities, and (3) the KGB searched his home and place of work because of his religious activities.

The Immigration Judge (the "IJ"), upon receiving the Application, requested an advisory opinion from the Office of Asylum Affairs of the Department of State. James L. Halmo, Director of the Office of Asylum Affairs, responded with a letter ("the Halmo letter") providing in relevant part as follows:

Under the Communists, believers of all faiths were oppressed [in Belarus]. However, post-independence Belarus has generally been tolerant of most religious practices, including that of Roman Catholics. There are some instances of prejudice, however, primarily because Roman Catholics are often suspect [sic] of being close to Poland, a[sic] historic foe of Belarus. In the past year, the President of Belarus has implied that the loyalty of such people is in question and there are limits on the activities of foreign Catholic Priests, most of whom are, in fact, Polish nationals. These forces do not contribute to a climate of ethnic and religious tolerance.

At the same time, the Roman Catholic Churches flourish in Belarus. Scores of Church buildings earlier confiscated by the Communists have been returned. We have no indication that ordinary individuals are prohibited, or inhibited, from practicing their religion. Thus, while these developments have been criticized, for example, in the most recent (1966)[sic] edition of our *Country Reports on Human Rights Practices* they do not constitute a pattern of abuse.

In May of 1996, the IJ conducted a hearing on the Application. Mikhailevitch testified that his father was persecuted in Belarus for having escaped from Siberia after spending twelve years there. He also discussed his religious activities, which included restoring church buildings, painting and restoring icons, and assisting others in obtaining baptism for infants. Mikhailevitch testified that the KGB questioned him in regard to those activities on two occasions in 1990. He also testified that, on one occasion, the KGB arrived at his home at 1:00 a.m. and knocked on the door for approximately 40 minutes before leaving. According to Mikhailevitch, several of his neighbors witnessed the incident and he consequently earned a reputation as "a criminal." He speculated that if he returned to Belarus, "it's possible that [the KGB] would put me in jail for several—several years." Mikhailevitch admitted, however, that he had never been arrested, imprisoned, or physically harmed in Belarus on account of his religious activities.

The IJ denied the Application at the conclusion of the hearing. Although finding that Mikhailevitch was "essentially credible" and that his fears of persecution in Belarus were "subjectively genuine," the IJ concluded that Mikhailevitch was statutorily ineligible for asylum because he did not qualify as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). In so ruling, the IJ determined that Mikhailevitch failed to satisfy his burden of proving either that he suffered past persecution in Belarus or that he had a well-founded fear of suffering future prosecution if he were returned to Belarus. In light of the foregoing determination, the IJ ruled that Mikhailevitch could not make the more stringent showing necessary for entitlement to withholding of deportation.

Mikhailevitch appealed to the Board from the IJ's denial of the Application. The Board affirmed the IJ's decision and dis-

missed Mikhailevitch's appeal in an order rendered on April 29, 1997. On May 28, 1997, Mikhailevitch timely filed a petition for review with this court under 8 U.S.C. § 1105a, as modified by section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub.L. No. 104–208, 1996 U.S.C.C.A.N. (110 Stat.) 3009–546. Pursuant to the latter section, our review of the merits of Mikhailevitch's petition will be based upon the Act's provisions as they existed before enactment of the IIRIRA.

## II. ANALYSIS

### A. Standard of Review

 We must ascertain whether the Board correctly determined that Mikhailevitch failed to sustain his burden of establishing eligibility for asylum and withholding of deportation. The Board's determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently. *Klawitter v. INS,* 970 F.2d 149, 151–52 (6th Cir.1992). We may reverse, on the other hand, if the evidence presented by Mikhailevitch "not only supports a contrary conclusion, but indeed *compels* it." *Id.* at 152. The appropriate inquiry is whether the applicable evidence "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812.

### B. The Board's Decision

In affirming the IJ's denial of the Application, the Board expressed its agreement "with the [IJ's] thorough and well-reasoned decision that [Mikhailevitch] has failed to establish that he has been persecuted in the past on account of his religion, or that he has a well-founded fear of persecution on that basis in the future in Belarus." The Board concluded that the IJ fully considered Mikhailevitch's statements as set forth in the

Application, along with his testimony at the hearing, and that Mikhailevitch had identified no "additional information on appeal on this subject which he feels the [IJ] should have, but failed to, consider."

The Board also found no merit in Mikhailevitch's claim that the IJ erred by impeding the efforts of Mikhailevitch's counsel to assist Mikhailevitch in correcting errors in the Application. It further rejected Mikhailevitch's argument that the IJ refused to listen to Mikhailevitch and thus became "confused as to some of the testimony regarding [Mikhailevitch's] experiences with the KGB." Finally, the Board was unpersuaded by Mikhailevitch's contention that the IJ failed to articulate reasons for concluding that Mikhailevitch did not merit a favorable exercise of discretion, determining that the IJ "did not make, and was not required to make, a discretionary finding with regard to asylum or withholding, as [Mikhailevitch] had not met his burden of establishing past persecution or a well-founded fear of persecution."

Mikhailevitch argues in support of his petition for review of the Board's order that he was deprived of due process of law because the IJ refused to allow him to testify at the hearing "in a full and complete manner," or "about his past instances of persecution in Belarus." Specifically, Mikhailevitch maintains that the IJ was "clearly biased" against him because she "often interrupted proceedings and seemed more concerned with expediting the hearing instead of allowing ... Mikhailevitch to fully explain his instances of persecution in Belarus[,]" and she questioned him "in a manner that was intimidating and was not intended to draw out explanations of his fear of persecution and his reason for not returning to Belarus." Mikhailevitch also argues that the IJ erroneously applied the standard applicable to the determination of a well-founded fear of persecution, and failed to consider the "substantial evidence" provided by Mikhailevitch's testimony. Accordingly, Mikhailevitch requests that we grant the Application or remand the matter to the IJ for a new hearing.

The INS, on the other hand, argues that the Board's affirmation of the IJ's decision is

supported by substantial evidence. The INS maintains that Mikhailevitch failed to put forth sufficient evidence necessary to establish either past persecution in Belarus (under the Soviet Union) or a well-founded fear of future persecution in Belarus as an independent country. The INS contends further that the IJ conducted a fair hearing and understood the evidence and claims presented. The INS also asserts that the IJ "did not prevent Mikhailevitch from testifying on any relevant subject, as evidenced by his counsel's waiver of several opportunities to introduce arguments or make additional arguments."

## C. Asylum

■ The Attorney General has discretion under the Act to grant asylum to a "refugee." 8 U.S.C. § 1158(a) (1994). The disposition of an application for asylum involves the following two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994). A "refugee" is defined under the Act as "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812 (quoting 8 U.S.C. § 1101(a)(42)(A)).

An applicant for asylum bears the burden of establishing that he or she qualifies as a refugee "either because he has suffered actual past persecution or because he has a well-founded fear of future persecution." 8 C.F.R. § 208.13(a)-(b) (1997). The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a) (1997). An applicant who satisfies his or her burden of establishing past persecution is presumed to have a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(i) (1997). The INS may rebut that presumption only through establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country "have

changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." *Id.*

■ In order to demonstrate eligibility for asylum on the basis of a well-founded fear of persecution under 8 C.F.R. 208.13(b)(2), an applicant must establish that: (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. An applicant's fear of persecution must be both subjectively genuine and objectively reasonable. *See Perkovic v. INS*, 33 F.3d at 620–21. An applicant must therefore "actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430–31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). The applicant, however, is not required "to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" 33 F.3d at 621 (quoting *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. 1207).

■ The Act provides no definition of "persecution," and this court has not previously articulated the same. The Seventh and Ninth Circuits agree that "persecution" embodies punishment or the infliction of suffering or harm. *See Bradvica v. INS*, 128 F.3d 1009, 1012 (7th Cir.1997) ("Persecution is not defined by the statute, but we have held that it must be punishment or the infliction of harm...."); *Surita v. INS*, 95 F.3d 814, 819 (9th Cir.1996) ("We have defined persecution as 'the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way that is regarded as offensive.'") (quoting *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir.1995)). Those same courts have held that harassment or discrimination without more does not rise to the level of persecution. *Bradvica*, 128 F.3d at 1012; *see*

*Bastanipour v. INS,* 980 F.2d 1129, 1133 (7th Cir.1992) (distinguishing persecution "from mere discrimination or harassment"); *see also Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995) (citing *Bastanipour,* 980 F.2d at 1133). We agree with our sister circuits that "persecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.

■ The evidence offered by Mikhailevitch in support of his position that he suffered past persecution is set forth in the Application and his testimony at the hearing. He testified that the KGB questioned him on several instances and also conducted searches of his home and place of business on account of his activities as a Roman Catholic. He also testified that on one particular occasion, the KGB arrived at his home at 1:00 a.m. and knocked on his door for 40 minutes before leaving. The record is devoid, however, of any evidence that Mikhailevitch was physically abused, imprisoned, or arrested by the KGB as a consequence of practicing his religion.

■ The foregoing evidence would certainly compel a determination that Mikhailevitch was "harassed" by the KGB because of his religious activities. Harassment alone, however, does not rise to the level of "persecution" under the Act. *See Bradvica,* 128 F.3d at 1012; *Ghaly,* 58 F.3d at 1431. In order to reverse the Board's determination that Mikhailevitch did not suffer past persecution in Belarus, we would have to decide that the foregoing evidence is such that a reasonable factfinder would be compelled to conclude that Mikhailevitch suffered physical punishment, infliction of harm, or a significant deprivation of liberty on account of his religious activities. We are satisfied that a reasonable factfinder would not be so compelled. *See Borca v. INS,* 77 F.3d 210, 215 (7th Cir.1996) (concluding that petitioner's allegations of being interrogated twice, having her dwelling searched twice, and receiving threatening phone calls, were not sufficiently serious to rise beyond the level of harassment.)

■ Because Mikhailevitch did not sustain his burden of establishing that he suffered past persecution, he was not entitled to the presumption under 8 C.F.R. § 208.13(b)(1)(i) of a well-founded fear of suffering future persecution. Mikhailevitch therefore retained the burden of proof on that issue. At the hearing, Mikhailevitch speculated that if he returned to Belarus, "it's possible that [the KGB] would put me in jail for several—several years." While the IJ did find that Mikhailevitch's fear of persecution in Belarus was "subjectively genuine," she nevertheless determined that Mikhailevitch had failed to establish that he had a well-founded fear of persecution in light of the changed circumstances in Belarus since Mikhailevitch's entry into the United States in 1991. In addition to Mikhailevitch's statements set forth in the Application and his testimony, the IJ reviewed the Halmo letter. The letter concludes that while believers of all faiths were oppressed under communism in Belarus, Roman Catholic churches now "flourish in Belarus" and there is no indication that "ordinary individuals are prohibited, or inhibited, from practicing their religion." Moreover, the Halmo letter indicates that the anti-religious sentiment which existed in Belarus under communist rule seems to have subsided.

In order to reverse the IJ's determination on this issue, which the Board ultimately adopted, we would have to decide that the evidence would compel a reasonable factfinder to conclude that there is a reasonable possibility of Mikhailevitch suffering future persecution if he were to return to Belarus. 8 C.F.R. § 208.13(b)(2); *see Perkovic,* 33 F.3d at 620–21. Under these circumstances, we are satisfied that the evidence would not compel such a conclusion.

Because the Board determined that Mikhailevitch does not qualify as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A) and substantial evidence supports that determination, we need not explore whether Mikhailevitch merits a favorable exercise of discretion with regard to his application for asylum. *See Perkovic,* 33 F.3d at 620.

## D. Withholding of Deportation

 The United States Code in effect at the time of Mikhailevitch's deportation hearing provided that "[t]he Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h) (1994). An application seeking withholding of deportation faces a more stringent burden of proof than one for asylum. *Cardoza–Fonseca*, 480 U.S. at 431–32, 107 S.Ct. 1207. In order to qualify for withholding of deportation, Mikhailevitch must demonstrate that there is a clear probability that he would be subject to persecution if he were to return to Belarus. *See Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir.1996). Because substantial evidence supports the Board's determination that Mikhailevitch is ineligible for asylum, it therefore follows that he cannot satisfy the more stringent standard for withholding of deportation.

## E. Due Process

 This court reviews *de novo* an alleged due-process violation based upon the manner in which an IJ conducts a deportation hearing. *Ivezaj*, 84 F.3d at 220. At the time of his deportation hearing, Mikhailevitch was entitled to "a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1252(b)(3) (1994). Such opportunity "need not be upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act." *Ivezaj*, 84 F.3d at 220 (citations and internal quotations omitted). The IJ is afforded broad discretion "to control the manner of interrogation in order to ascertain the truth." *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir.1997).

 Mikhailevitch contends that his due process rights were violated because the IJ questioned him in an intimidating manner

and prevented him from fully explaining instances of past persecution that he suffered in Belarus. To the contrary, the Board concluded that the IJ fully considered and incorporated Mikhailevitch's statements as set forth in the Application and in his testimony regarding his family's experiences in Belarus. Moreover, the Board found that Mikhailevitch failed to identify any additional information that the IJ should have, but failed to, consider.

Mikhailevitch's due-process challenges focus upon two specific exchanges between the IJ and Mikhailevitch's counsel. The first occurred during Mikhailevitch's direct examination dealing with the KGB's questioning of him in Belarus. In attempting to clarify the time frame in which the questioning occurred, the following discussion ensued between the IJ and Mikhailevitch's counsel:

JUDGE TO MS. YAEGER–LISECKI:

Q. Could we put a time frame on this, counsel?

A. Yeah, I thought we had two hours.

Q. Counsel, when did this happen? What time?

A. Oh, I'm sorry.

Q. What time frame did this happen?

A. I'm sorry. I didn't understand your question, Your Honor.

Q. At this rate, it's going to take a lot longer than two hours, counsel.

A. My apologies.

Q. What year did this occur? When did it start? Are we talking 1978?

A. No, we're not.

Q. 1964?

A. No, no.

Q. When?

A. 1990, Your Honor. That's my understanding.

Q. Well, if you're aware of that, counsel, that's because you've heard it before. It's not on this record. Let's —

A. All right. Fine. Fine. Okay.

The second such exchange occurred when Mikhailevitch testified on direct examination regarding his grandfather's exile to Siberia and the effects of the same on his father.

The IJ commented to Mikhailevitch's counsel: "[W]hile the background of the family is interesting, I assume this was done by the Soviet Union?" At that point, Mikhailevitch's counsel changed the direction of the examination by requesting that Mikhailevitch focus on "his story first." Mikhailevitch complains that this exchange between the IJ and his counsel prevented him from fully testifying about his past persecution.

We are satisfied that neither of the foregoing exchanges resulted in the claimed effect of a due-process violation, nor do they reveal that the IJ was overly abrupt or intimidating. The IJ's questions were apparently intended to clarify a time frame and focus more directly upon Mikhailevitch's situation, not to intimidate him or prevent him from presenting relevant evidence on his own behalf. *See Iliev,* 127 F.3d at 643. As the Seventh Circuit stated in *Iliev:*

> Although the Immigration Judge may have been "brusque," and perhaps could have achieved his objective in a more courteous manner, it is difficult to say on the cold record that his approach warrants criticism; certainly, he did not deny a fair trial.

*Id.*

### III. CONCLUSION

The Board, through adoption of the IJ's decision, found that Mikhailevitch is not a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A) because he "failed to establish that he has been persecuted in the past on account of his religion, or that he has a well-founded fear of persecution on that basis in the future in Belarus." Because we are satisfied that the Board's determination is supported by reasonable, substantial, and probative evidence on the record considered as a whole (*see Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812), we must **DENY** Mikhailevitch's petition for review.