**Xin Kong NI, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellee.**

No. 01–3428.

United States Court of Appeals, Sixth Circuit.

Dec. 27, 2002.

· Before SILER and DAUGHTREY, Circuit Judges, and ALDRICH,* District Judge.

PER CURIAM.

The petitioner, Xin Kong Ni, seeks review of decisions by an immigration judge and the Board of Immigration Appeals denying his request for asylum in the United States. Ni contends that the denial of asylum was improper both because he suffered past persecution in China for his political beliefs and also because of his well-founded fear of future retribution should he be returned to that country. Ni further insists that his request for relief should have been granted under Article 3 of the United Nations Convention Against Torture and pursuant to the Chinese Student Protection Act. Because we conclude that the petitioner has failed to meet his burden of proving entitlement to relief on any of these grounds, we affirm the Board's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

Xin Kong Ni, a native and citizen of China, received his teaching certificate in that country in 1980, enabling him to teach high school mathematics and geometry in Fujian Province. During the 1980's, Ni became interested in national political events as a result of reading news accounts provided by newspapers printed in Hong

* The Hon Ann Aldrich, United States District Judge for the Northern District of Ohio, sit- ting by designation

Kong and began discussing certain issues and ideas with select students in his classes. He claims that, as a result, he was criticized by his superiors and was denied a raise in his teaching rank in 1988.

Ni also claims that, after the student uprisings on June 4, 1989, in Beijing's Tiananmen Square, he was accused by local officials of supporting the demonstrations and the pro-democracy gatherings. He said that, fearing punishment, he then hid with friends before eventually traveling to Hong Kong, to Thailand, to Mexico, and ultimately to the United States, entering this country in 1990 illegally without inspection.

In 1993, Ni apparently filed documents with the Immigration and Naturalization Service seeking to have his status adjusted to that of a permanent resident. Ultimately, the application for adjustment of status was denied on March 25, 1994, with the following explanation: "[A]s you were not inspected and admitted or paroled in the United States, you are statutorily ineligible to adjust to that of an alien lawfully admitted for permanent residence; accordingly, your application is denied." Undaunted, Ni then filed in December 1994 for asylum in the United States, alleging that he faced persecution in China as a result of his support of the Chinese students' democracy demonstrations and other human rights initiatives.

An administrative hearing on the request was scheduled before an immigration judge. At that hearing, the petitioner related that he had learned from his wife that, after he went into hiding, Chinese authorities delivered messages to his home in China directing him to present himself at a local "educational department" and "receive investigation. Otherwise, [the department] will have recourse to law to punish [Ni]." Obviously, the petitioner did not comply with that request and testified that he now fears he will be punished and jailed upon his return to China. Furthermore, Ni claimed that Chinese citizens are currently required to carry national identification cards and that he may not be able to obtain such documentation because of his prior fugitive status and his unauthorized departure from the country.

After hearing the testimony offered by the petitioner, the immigration judge ruled that Ni was admittedly deportable because of his illegal entry into the country and that he had not established his entitlement to asylum under applicable legal provisions. First, the judge concluded that the petitioner had not suffered past persecution as a result of his political beliefs. Although Ni was reprimanded for discussing political events with his classes and "suffered a diminution in salary and perhaps was refused a promotion that he felt that he was entitled to," the judge stated that the possibility clearly exists that the petitioner was merely disciplined "for discussing matters outside the realm of mathematics and geometry." Thus, the administrative officer ruled that Ni had not suffered the *persecution* necessary to justify a grant of asylum.

Moreover, the judge downplayed the reasonableness of the petitioner's fear of persecution should he return to China. According to the judge, tensions in Ni's native province have cooled in the years since the demonstrations and were, in fact, never as heated as they were in the areas nearer Beijing. Also, the immigration judge recognized that the fact that Ni could be punished upon his return for violation of internal rules forbidding hiding from the police or leaving the country without permission does not justify extension of the largesse of asylum; instead, it is only past or future persecution for, in this case, expressions of political opinions that would support permitting Ni to re-

main in the United States despite his initial illegal entry. Finally, the immigration judge noted that the very fact that Ni's wife and child were able to obtain travel authorization from the Chinese government to join the petitioner in the United States, that Ni himself was able to secure an affidavit stating that he has no criminal record in his native country, and that the Chinese consulate assisted Ni in obtaining a new passport in the United States indicate that China has no intention of subjecting the petitioner to persecution should he return.

The petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals, which concurred in the conclusion that "the evidence presented fails to establish that [Ni] was persecuted in the past on account of his race, religion, nationality, membership in a particular social group, or political opinion, actual or imputed, or that he has a well-founded fear of persecution based on any of the same grounds." Additionally, the Board denied the petitioner's request to remand and reopen the proceedings to consider his application for adjustment of status under the Chinese Student Protection Act and to pursue relief under the Convention Against Torture. In addressing the request for adjustment of status under 8 U.S.C. § 1255(i), the Board noted that adjustment of status applications must be filed "on or after October 1, 1994," and that applications under the Chinese Student Protection Act must have been filed prior to July 1, 1994. Thus, the two provisions could not work in concert and Ni was entitled to no relief under their frameworks. The Board further ruled that the showing necessary for relief pursuant to the Convention Against Torture— that "it is more likely than not that [Ni] would be tortured" if returned to China— is a standard even more stringent than that required to gain asylum. Because the petitioner was not entitled to relief under the asylum provisions of the immigration law, relief under the Convention Against Torture was also unavailable, and reopening proceedings on that basis would be fruitless.

## DISCUSSION

### I. Denial Of Asylum

In this appeal, petitioner Ni first asserts that the Board erred in denying his request for asylum. We examine such an allegation to determine whether the Board's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Mikhailevitch v. INS*, 146 F.3d 384 (6th Cir. 1998). In fact, a Board decision denying asylum may be overturned only "if the evidence presented ... was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias–Zacarias*, 502 U.S. at 481. In other words, the petitioner "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite [persecution or] fear of persecution." *Id.* at 483–84.

Pursuant to the provisions of 8 U.S.C. § 1158(b)(1), the attorney general *may* grant asylum to an alien who applies for such relief "if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A)...." In relevant part, the referenced statutory subsection then defines a "refugee" as "any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opin-

ion." 8 U.S.C. § 1101(a)(42)(A). Consequently, resolution of any request for asylum involves "a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute and, second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir.1994).

Although relevant statutes and regulations offer no working definition of the concept of "persecution," we have previously held that the term encompasses "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. Nevertheless, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a).

■ In this matter, Ni has first failed to adduce sufficient evidence to overturn the Board's finding that the petitioner was not subjected to *past* persecution. Ni did offer into evidence at the administrative hearing notices allegedly sent to him in China advising him that he had received "a serious disciplinary warning" and directing him to report to education offices to "receive investigation" as a result of his comments concerning the student uprisings. Although one of the notices stated that the educational department would "have recourse to law to punish [Ni]" if he did not report, no evidence establishes that the petitioner actually suffered any physical punishment, harm, or significant deprivation of liberty. Nor did the school system's decision to reduce Ni's salary and deny him an allegedly deserved promotion impose the hardships necessary to constitute "persecution." Thus, the record before this court on appeal does not *compel* a conclusion contrary to that reached by the Board on this issue.

■ Second, the record also contains "reasonable, substantial, and probative evidence" to support the Board's ruling that Ni cannot demonstrate a well-founded fear of persecution should he be returned to China. As we have previously explained:

In order to demonstrate eligibility for asylum on the basis of a well-founded fear of persecution under 8 C.F.R. 208.13(b)(2), an applicant must establish that: (1) he or she has a fear of prosecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. An applicant's fear of persecution must be both subjectively genuine and objectively reasonable. *See Perkovic v. INS*, 33 F.3d at 620–21. An applicant must therefore "actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430–31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). The applicant, however, is not required "to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" 33 F.3d at 621 (quoting *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. 1207).

*Mikhailevitch*, 146 F.3d at 389.

Without question, Ni testified that he fears he will be arrested and imprisoned if he is returned to China. Interestingly, however, the petitioner does not claim that

such imprisonment has ever been threatened or is the result of his "political opinion" regarding the 1989 pro-democracy movement within the country. Rather, his testimony is replete with references to the fact that he fears arrest and imprisonment for violation of internal Chinese mandates—because of the length of his unauthorized absence from the country, because of his flight from China, and because he did not report to the educational authorities as required.

Additionally, other evidence in the record before us undercuts Ni's claim that there is a legitimate and reasonable chance he will be jailed and persecuted upon his return to his native country. For example, Ni was able to obtain a passport from the Chinese consulate in the United States, his wife and child were able to secure the necessary documentation and approval to travel from China to this country, and the petitioner obtained a "notarial certificate" from China stating that he "had no record of committing offences [sic] against the criminal law during his residence in China." Moreover, a December 1995 report from the United States Department of State on conditions in China indicates that, even at that time, more than five years prior to the Board's decision in this case. high-level Chinese security officials "stated that all cases from the period of the Tiananmen demonstrations have been concluded and that China has released all those imprisoned in Beijing in connection with the Tiananmen demonstrations." Even though the possibility certainly exists that other individuals might still be detained *outside* Beijing, the report continues:

We have been aware of many asylum applicants who base their cases on a claim that the authorities had not realized, by the time of their departure from China, the degree to which these applicants had supported the pro-democracy activists. This undoubtedly could apply to some individuals who managed to leave China, but it becomes less credible the further we move beyond the 1989 crackdown in view of Chinese assurance that all Tiananmen cases have been resolved.

These facts provide substantial evidence in support of the Board's decision that the petitioner's fear of persecution in his homeland was not well-founded. In any event, the appellate record dominated by such information clearly does not "compel" the contrary conclusion, the standard necessary to reverse the ruling of the Board. *See Mikhailevitch,* 146 F.3d at 388. The administrative decision to deny asylum to Ni must, therefore, be affirmed.

## II. Denial Of Relief Under The Convention Against Torture

■ Before this court, Ni also argues that the Board erred in denying his request for reopening of the deportation proceedings in order to pursue relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. To obtain withholding of removal under the Convention Against Torture, however, "[t]he burden of proof is on the applicant ... to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).[1] Although

---

1. Applicable regulations define "torture" as:
 [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at

"[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration," *id.*, that burden is significantly greater than the burden required to demonstrate eligibility for asylum. For example, whereas asylum *may* be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is "more likely than not that [the applicant] would be tortured." Because Ni cannot demonstrate his entitlement to a grant of asylum, he also cannot meet the more stringent requirements under the Convention Against Torture. The Board did not, therefore, abuse its discretion in refusing to reopen proceedings to allow the petitioner to advance his claim.

### III. Denial Of Relief As A Beneficiary Of The Chinese Student Protection Act

Ni's final allegation of error concerns the Board's decision not to remand his case for adjustment of status under the Chinese Student Protection Act of 1992, Pub. L. No. 102–404. 106 Stat. 1969, 8 U.S.C. § 1255 (note). Ordinarily, under certain conditions, the attorney general is vested with discretion to adjust the status of an alien who was "inspected and admitted or paroled" into the United States to that of "an alien lawfully admitted for permanent residence." *See* 8 U.S.C. § 1255(a). Those conditions precedent— that the alien make application for the adjustment, that the alien be eligible for an immigrant visa and be admissible to this country for permanent residence, and

that the immigrant visa be immediately available at the time the application is filed—could not, however, be satisfied by many Chinese students in the aftermath of the uprisings in 1989. Consequently, the United States government agreed to soften its position on insisting upon the return of individuals whose authorized stay in this country had expired and, pursuant to the Chinese Student Protection Act, waived impediments to attaining lawful permanent resident status. Nevertheless, the Act did require that applicants for the adjustment of status file requests for such consideration during a 12–month period beginning July 1, 1993. *See* § 2(e).

When Ni was required to file his application under the Act, he was, however, ineligible for the very benefits the Act bestowed because, at all times prior to the June 30, 1994, close of the Act's application period, 8 U.S.C. § 1255(a) still permitted relief only to those aliens who had entered the United States through legal channels. At the time of the ruling on Ni's request for adjustment of status in March 1994, therefore, immigration officials had no discretion to grant relief to individuals in the petitioner's situation.

Prior to the date of the petitioner's hearing on his asylum request, the legal landscape of the world of status adjustment changed drastically. Through the enactment of § 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i), adjustment of status was made available even to aliens who entered the United States without inspection as long as, among other things, those individuals were "physically present in the United States" and had paid

the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. 8 C.F.R. § 208.18(a)(1). Furthermore, "torture" is considered "an extreme form of cruel and inhuman treatment and does not include

lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture," 8 C.F.R. § 208.18(a)(2), and also "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." 8 C.F.R. § 208.18(a)(3).

an application fee of $1000. *See* 8 U.S.C. § 1255(i)(1). The INS argued, and the Board of Immigration Appeals ruled, however, that the relief provided by the amendment to the Immigration and Nationality Act was prospective only and was not, therefore, available to persons seeking status adjustment through the Chinese Student Protection Act that had expired three months prior to the effective date of § 1255(i).

In support of its position, the Board cited the Ninth Circuit decision in *Chan v. Reno,* 113 F.3d 1068 (9th Cir.1997). In that case, the court adopted the reasoning advocated by the INS in this matter, stating:

> The eligibility period of the CSPA [Chinese Student Protection Act] expired on June 30, 1994. CSPA § 2(e). Section 245(i)'s provisions took effect on October 1, 1994. Act Aug. 26, 1994, § 506(c). The language of § 245(i) itself is entirely prospective; it indicates that aliens who were not lawfully inspected upon entry *may* apply and the Attorney General *may* accept such applications only *if* the applicant pays an increased filing fee. 8 U.S.C. § 1255(i)(1). Congress could have extended the CSPA application period or granted other relief which would have allowed plaintiffs and other CSPA applicants to obtain the benefits of § 245(i). Congress chose not to do so. Moreover, plaintiffs' argument would enable them to avoid the increased filing fee imposed by § 245(i), a result entirely at odds with the statute. Because the eligibility and effective dates are clear, we conclude that aliens who applied for adjustment under the CSPA are not eligible for treatment under § 245(i).

*Id.* at 1072.

 The validity of the Ninth Circuit's approach is, however, compromised by an important misconception upon which the analysis is based—the belief that the Chinese Student Protection Act itself, and entitlement to the relief it seeks to provide, expired with the June 30, 1994, deadline to apply for the government largesse. The plain wording of the Act nevertheless references June 30, 1994, only insofar as that date defines the end of the *"application period,"* not the termination of the Act's protections. In order to avoid reading § 2(e) of the Act, the subsection entitled "Application period defined," as a sunset provision, we conclude that the Act remained in effect even after the application period expired, so as to allow for the resolution of all claims for adjustment of status then pending. To conclude otherwise would be tantamount to penalizing any individual who applied for relief under the Act at the last moment allowed under the 12–month application period because, under the INS's interpretation, the Act and its benefits would no longer have been available at the end of the day on June 30, 1994. Thus, to the extent that a Chinese national filed a timely application under the Chinese Student Protection Act and no action was taken on that request for relief until at least October 1, 1994, the effective date of the enactment of 8 U.S.C. § 1255(i), such an applicant, even if he or she initially entered the country without inspection, should be allowed under § 1255(i) to proffer the $1000 fee called for in that subsection and seek the discretionary relief discussed in the legislation, while still being entitled to the benefits available under the Chinese Student Protection Act.

In this case, however, Ni is unable to take advantage of such a fortuitous circumstance. In fact, the administrative record indicates that the petitioner's request for adjustment of status under the Chinese Student Protection Act had been finally resolved almost seven months prior to the effective date of 8 U.S.C. § 1255(i).

Under these circumstances, the Board of Immigration Appeals did not err in refusing at a later date to reopen Ni's proceedings and remand the petitioner's claim for adjustment of his status.

## CONCLUSION

On June 4, 1989, the collective eyes of the world stared with horror at the bloodshed that occurred in Tiananmen Square at the hands of the Chinese government. As a nation halfway around the globe from the scene of that massacre, we might never comprehend the thoughts and fears that then flooded through the minds of Chinese citizens who had dared to challenge decades of authoritarian rule. Nevertheless, it is clear that substantial evidence does exist in this record to support the decisions of the immigration judge and the Board of Immigration Appeals that Xin Kong Ni did not suffer persecution at the hands of his government for his political opinions prior to fleeing from China. Moreover, the record also contains substantial evidence to support the conclusion that any fear of retaliation, persecution, or torture upon the petitioner's return to his native land is not well-founded in light of current conditions within that country. The Board's denials of Ni's requests for asylum and for remand for consideration of his plea for protection under the Convention Against Torture were, therefore, proper. Additionally, Ni has failed to establish that he was entitled to any adjustment of status relief under the Chinese Student Protection Act at the time his application was considered. Consequently, we must hold that the Board correctly denied Ni's entire petition for review in this matter, and we therefore AFFIRM

the Board's decision, even if we do not agree completely with its reasoning.