**Elhadji NIANG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 03–3218.

United States Court of Appeals, Sixth Circuit.

Aug. 13, 2004.

Mark M. Nesbit, Nesbit Law Firm, Columbus, OH, for Petitioner.

Aviva L. Poczter, Emily A. Radford, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for Respondent.

Before: BATCHELDER and GIBBONS, Circuit Judges; and STAFFORD, District Judge.*

*ORDER*

Elhadji Niang petitions for judicial review of an order by the Board of Immigration Appeals (BIA) which affirmed an immigration judge's (IJ) determination that he was subject to removal despite his applications for asylum and the withholding of removal. The parties have waived oral argument and the panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

Niang is a native and citizen of Mauritania, who entered the United States without authorization in 1996. The Immigration and Naturalization Service initiated removal proceedings against Niang in 1997

* The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

alleging that he had illegally entered this country. Niang conceded removability and applied for asylum and the withholding of removal.

The IJ conducted a hearing on July 26, 1999, where Niang was represented by counsel. Niang testified that he had been persecuted in Mauritania because of his race and ethnic background. The IJ found that this testimony was not fully credible and that Niang had not established sufficient grounds for relief. The IJ noted that even if it were assumed that Niang's testimony was credible, changes in the condition of the country would not subject him to persecution upon returning home. Thus, the IJ denied the applications for asylum and for the withholding of removal as Niang had not shown that he was persecuted in the past or that he had a well-founded fear of persecution in the future. The BIA adopted the IJ's credibility findings and dismissed Niang's administrative appeal on January 14, 2003.

Niang filed a timely petition for judicial review on February 12, 2003. On appeal, Niang states that the BIA abused its discretion in summarily dismissing Niang's appeal, that substantial evidence did not support the IJ's credibility determination, and that the IJ's determination that the country's conditions had changed was erroneous.

The resolution of an asylum request involves a two-part inquiry. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998). Niang must show not only that he is a refugee, but also that his application merits a favorable exercise of administrative discretion. *See id.* The IJ did not reach the discretionary step here, as Niang did not meet his burden of showing that he is a refugee. A "refugee" is defined as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution

on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *accord INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). A petition for judicial review should not be granted unless the evidence is so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir.2001).

An asylum application is also treated as an application for the withholding of removal. *Mikhailevitch*, 146 F.3d at 391. However, the burden of proving eligibility for asylum is less than the burden of proving entitlement to withholding of removal. *See id.*

Niang argues that the IJ's credibility finding was not based on substantial evidence. However, the IJ's factual determination regarding credibility must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The IJ cited several inconsistencies between Niang's written application and testimony that went to issues that were central to the merits of his asylum claim. Niang testified that he had inherited animals, yet he had indicated that he engaged in the farming of sorghum and potatoes. There is a discrepancy as to whether Niang had been arrested once or twice. There is an inconsistency as to his release from prison. One story indicates that Niang was released because a soldier felt sorry for him. In the second story, Niang stated he escaped. Finally, there were several inconsistencies about his family and their apparent deaths. Given the numerous inconsistencies between Niang's application for asylum and testimony, the IJ's decision to find that Niang's testimony was not credible is supported by substantial

evidence. *See Chebchoub v. INS,* 257 F.3d 1038, 1043–45 (9th Cir.2001).

Niang also cites the testimony of Dr. Okey Onyejekwe, a professor of African studies at Ohio State University, to support his claim regarding the conditions in Mauritania. However, as the IJ noted, Dr. Onyejekwe has never been to Mauritania and has never written about the country. Although Dr. Onyejekwe had visited Senegal the week before the hearing, Dr. Onyejekwe had not talked to any Mauritanians in Senegal. Given the lack of direct information that Dr. Onyejekwe possessed about Mauritania, the IJ did not err in rejecting Dr. Onyejekwe's testimony.

Niang also challenges the IJ's conclusion that the conditions in Mauritania have substantially changed since his departure. The IJ found that even if Niang was credible, the changes in the country's conditions make him ineligible for asylum. Two State Department country reports and a detailed letter from the American ambassador to Mauritania address the conditions in Mauritania and explain that throughout 1989 and 1990, black Mauritanians were expelled from Mauritania to Senegal. However, by 1997 and 1998, tens of thousands of Mauritanian refugees had returned to Mauritania from Senegal. In fact, conditions in Mauritania had improved to the point where the United States ambassador to Mauritania asserted that the conditions in Mauritania were acceptable for returning Afro–Mauritania refugees. Given this evidence, the IJ's conclusion that the conditions in Mauritania had improved since Niang's departure is supported by substantial evidence.

Finally, Niang contends that the BIA abused its discretion in affirming the IJ's decision without an opinion because of the alleged errors which have previously been discussed. However, because the IJ's credibility determination and the IJ's conclusion regarding the change in conditions in Mauritania are supported by the record, the IJ's decision satisfies the standard of 8 C.F.R. § 1003.1.

Accordingly, the petition for judicial review is denied.