**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0019n.06
Filed: January 6, 2005

**No. 03-3560**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| VALMIR GJINAJ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE BOARD |
| ) | OF IMMIGRATION APPEALS |
| ) | |
| JOHN ASHCROFT, U.S. Attorney General, ) | |
| ) | |
| Respondent. ) | |

**Before: SILER, SUTTON, and FARRIS,** [*] **Circuit Judges.**

**SILER, Circuit Judge.** Petitioner Valmir Gjinaj, an Albanian citizen and native, petitions

for review of the decision of the Board of Immigration Appeals ("BIA") that dismissed his appeal

of denial of asylum, withholding of removal, and protection under the Convention Against Torture

("CAT"). For reasons stated hereafter, Gjinaj's petition is DENIED.

**BACKGROUND**

Gjinaj entered the United States without documentation in 1998. The following year, after

receiving a Notice to Appear, he conceded removability and requested asylum, withholding of

removal, consideration under the CAT, and voluntary departure. His claim for asylum was based

---

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

on persecution relating to his Catholic religion, membership in a particular social group, and political opinion.

According to his asylum application, Gjinaj became a member of the Democratic Party in Albania in 1992, and he was elected the Democratic Party's Secretary for the Koplik area in 1994. After the Socialist Party took power in 1997, Gjinaj began to receive various threats, which he believed were related to his leadership in the Democratic Party. He also was a member of the Association for the Formerly Politically Persecuted People ("Association").

In August 1997, Gjinaj was arrested by the Albanian police. For three days, he was interrogated, beaten, and urged to end his affiliations with the Catholic Church and the Democratic Party. Shortly after his release, the house that he shared with his parents, sister and brother was burned down. "Down with Democrats! Down with Catholics!" was written on a stone wall of the house. In February 1998, Gjinaj and his family left Albania and traveled to Italy. Due to concerns relating to his parents' health, the rest of his family remained in Italy; however, Gjinaj continued to the United States.

Gjinaj submitted various documents to support his claim for asylum. A Consular Investigator determined that Gjinaj's birth certificate was valid, but that four other official documents he submitted were fraudulent. Gjinaj asserted that all documents were valid, and additional time was granted to respond to the report. Over one year later, he submitted additional documents to rebut the Investigator's assertions that his documents were fraudulent; however, these additional documents were not authenticated under 8 C.F.R. § 287.6. Furthermore, many of the documents were questionable in light of the Investigation Report – for example, a statement was

presented that was signed by Gjuro Kacaj, whom the Investigator previously had determined was not the head of the Association, that asserted he was the head of the Association. Kacaj also signed a statement that indicated he was known both as Gjuro and as Gjon Kacaj. At a hearing before the Immigration Judge ("IJ"), Gjinaj testified that a cousin in Albania obtained these supplemental documents at his request. This cousin, however, also obtained the documents that were previously found to be fraudulent. Because the IJ found many of Gjinaj's supplemental documents to be unreliable, the majority were not admitted.

In February 2002, the IJ denied asylum based on adverse credibility. The IJ relied upon inconsistencies within Gjinaj's testimony and his presentation of fraudulent documents to support this finding. The IJ also determined that Gjinaj had provided materials in support of his application for asylum that were deliberately fabricated and, therefore, found his application to be frivolous.

Gjinaj's brief on appeal to the BIA, submitted in October 2002, included discussion of evidence that had been newly discovered.[1] Gjinaj's attorney, in another asylum case, received an Investigation Report that stated that Gjon Kacaj was the head of the Association in Gjinaj's district. This second investigation was completed by the same investigator that had investigated Gjinaj's documents. In Gjinaj's case, this investigator had asserted that Gjinaj's Association document was false because Gjuro Kacaj was not the head of the Association. Based upon this newly discovered

---

[1] In October 2002, Gjinaj submitted a motion for consideration of a late-filed brief, an appeal brief, and a motion for remand. The BIA granted the motion to submit an untimely brief, but it did not respond to the motion for remand. Gjinaj has not challenged the resolution of the motion to remand in this appeal.

evidence, Gjinaj submitted that the entire Investigation Report in his case was unreliable.

In 2003, the BIA sustained Gjinaj's appeal in part and dismissed in part, finding that Gjinaj had not made a credible claim for asylum, but reversing the IJ's determination that Gjinaj had filed a frivolous application. The BIA agreed that Gjinaj had failed to rebut the finding of the Investigation Report and that Gjinaj's credibility had been undermined by the submission of fraudulent documents. The BIA did not specifically address Gjinaj's newly discovered evidence.

**ANALYSIS**

The IJ has discretion to grant asylum to any alien who qualifies as a "refugee." 8 U.S.C. § 1158(a), (b). A refugee is any alien unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Ouda v. INS*, 324 F.3d 445, 451-52 (6th Cir. 2003) (quoting 8 C.F.R. § 208.13(a)).

The BIA's factual determination is reviewed under the substantial evidence standard; thus, its decision must be upheld "as long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Reversal is only warranted if this court "finds that the evidence not only supports a contrary conclusion, but *compels* it." *Id.*

Gjinaj argues that (1) the BIA erred in not submitting this case for three-person review; (2) the BIA erred in upholding the IJ's adverse credibility determination; and (3) the IJ's refusal to

- 4 -

admit certain documents was in violation of due process guarantees. Gjinaj did not specifically reference the BIA's failure to rule upon his motion to remand, although he has asserted in this appeal and before the BIA that his newly discovered evidence casts doubt upon the reliability of the Investigation Report.

### BIA's Employment of Single-Member Review

This court has not yet determined whether the BIA's decision to employ single-member review under 8 C.F.R. § 1003.1(e)(5) is reviewable. Even were we to determine that review of this decision was proper, Gjinaj's argument against using single-member review fails. A case may only be assigned to a three-member panel under certain circumstances. 8 C.F.R. § 1003.1(e)(6). Because, as discussed below, the IJ's decision was not clearly erroneous, not contrary to BIA precedent, and did not require reversal, this case was not required to be assigned to a three-member panel.

### Due Process Concerns

Gjinaj next asserts that the IJ's refusal to admit many of his supplemental documents was a violation of due process. An alleged due process violation that is based upon the manner in which an IJ conducts a hearing is reviewed *de novo* by this court. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Gjinaj was unable to lay a foundation to demonstrate that his supplemental documents were what they were purported to be. These documents were not authenticated, and they were obtained by the same person who had provided the documents that were found to be fraudulent. As a result, the IJ did not err in excluding many of Gjinaj's supplemental documents.

### Adverse Credibility

The IJ's adverse credibility finding was based in large part on the submission of fraudulent documents. In addition to the submission of these documents, the IJ pointed to inconsistencies or omissions in Gjinaj's application and/or testimony to support a finding of adverse credibility. Although the inconsistencies noted by the IJ generally appear to be minor, and at least one omission noted by the IJ regarding Gjinaj's alleged failure to mention the burning of his house appears to be inaccurate, the IJ's major concern was with Gjinaj's fraudulent documents. The IJ's relation of Gjinaj's credibility to his presentation of fraudulent documents was fully in line with BIA precedent. *See Matter of O-D-*, 21 I. & N. Dec. 1079, 1083 (BIA 1998) ("The presentation of fraudulent documents is a critical factor in our analysis of the respondent's claim. Such fraud tarnishes the respondent's veracity and diminishes the reliability of his other evidence.").

The BIA also noted that the submission of fraudulent documents "seriously undermine[d] his overall credibility." The original Investigation Report indicated that four of Gjinaj's documents were fraudulent. The second Investigation Report, from an unrelated case, arguably applies to only one of the four documents. While Gjinaj asserts that the investigator's entire report is now called into question, he has provided no evidence to support a finding that the other three documents were valid. The BIA found that Gjinaj had "failed to rebut the finding of the Consular investigation." The BIA's decision to dismiss Gjinaj's appeal of denial of asylum was supported by substantial evidence, and a contrary conclusion is not compelled.

Because Gjinaj has not established that he is entitled to asylum, he also has not made the stronger showing required for withholding of removal. *Pilica v. Ashcroft*, 388 F.3d 941, 955 (6th Cir. 2004). Furthermore, he has not demonstrated that he is eligible for CAT relief. *Id*.

No. 03-3560
Gjinaj v. Ashcroft

**CONCLUSION**

Gjinaj's petition for review is **DENIED.**