File Name: 05a0118n.06
Filed: February 15, 2005

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 03-4570**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SOKOL VUSHAJ and DRITA VUSHAJ, | ) | |
| | ) | |
| Petitioners-Appellees, | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; EDGAR, District Judge.[*]

SUTTON, Circuit Judge. Albanian citizens Sokol Vushaj and his wife Drita Vushaj seek review of a decision of the Board of Immigration Appeals (BIA) denying their petition for asylum, withholding of removal and protection under the Convention Against Torture. The BIA concluded that the petitioners were not credible and that, even if their testimony were credited, they had not demonstrated past persecution or a well-founded fear of future persecution. We agree and deny the petition.

---

[*] The Honorable Robert Allan Edgar, Chief United States District Court Judge for the Eastern District of Tennessee, sitting by designation.

On October 21, 2000, Drita Vushaj, using fraudulent documents, entered the United States via Dulles International Airport in Virginia. Several months later, on March 17, 2001, her husband, Sokol Vushaj, also using fraudulent documents, entered the United States via San Francisco International Airport. Immigration authorities interviewed each spouse about the fraudulent documents and about their reasons for attempting to flee Albania for the United States and temporarily allowed them to enter the United States.

The couple eventually conceded removability, and Sokol filed an application on his and Drita's behalf for asylum, withholding of removal and protection under the Convention Against Torture. In the application, Sokol emphasized two reasons for obtaining asylum. First, he alleged that as Catholics, he and his family have been persecuted by Muslims. Attempting to bolster this point, he noted that on September 3, 1999, Muslims kidnapped him and held him for ransom. During the kidnapping, he added, he was beaten and warned never to wear a crucifix or to attend church again, and he was released only when his father sold much of his family's property to pay the ransom.

Second, Sokol alleged that he and his wife fear that if she is forced to return to Albania, she will be kidnapped and sold into prostitution in Europe. To support this claim, Sokol noted that in October 2000, three armed men approached his wife and threatened to shoot her if she did not get in the car with them. One of the men allegedly grabbed her arm, but she managed to break free and run into the woods. Relying on these incidents, Sokol said that he will be killed if he returns to

Albania (because he is Catholic) and that he and his wife will live in constant fear that criminal gangs will kidnap his wife and sell her into prostitution.

In an oral opinion spanning thirty-five pages of transcript, the Immigration Judge (IJ) found that neither petitioner was credible. According to the IJ, the information that Sokol and Drita provided at their border interviews, in the application and during the immigration hearing contained numerous material inconsistencies. At one point in his application, Sokol stated that his kidnappers knew he was Catholic when they picked him up because everyone in his village is Catholic. But at another point in his application, he stated that "criminal gangs" captured him for ransom and beat him only when they later discovered he was Catholic. In his application, he stated that his father had to sell much of the family's property to pay his ransom, but in his testimony he said that no one paid any ransom. Nor did he mention his kidnapping during his interview at the border, saying instead that Muslims were chasing him. In the interview at the border, he said that his wife had been kidnapped three times but, in their application and in their testimony, the Vushajs said that Drita had faced one attempted kidnapping.

Sokol also testified that he came to the United States because he received numerous threats but he never was able to detail their source or substance, much less corroborate them. And neither his statements at the border nor his application contain any allegations of recent threats. In another inconsistency, Sokol at one point testified that there was no church in his village, but later said that there was a church. He testified that it is unsafe for him to go to church in Albania, even though other parts of the record indicate that all of the people in his village are Catholic.

- 3 -

Sokol also testified that he had not attended church in Albania since 1999, at some time before his marriage. But Sokol was married on January 18, 1999, which would mean that he last could have attended church for 17 days in January, and more importantly would mean that he stopped attending church nine months before he allegedly was kidnapped and threatened by Muslims because of his religious beliefs.

Drita's testimony, the IJ concluded, also undermined the credibility of the application. In her entry interview, she stated that she was not aware of any persecution that had ever happened to any of her family members, which undercut Sokol's claim that he was abducted and held for ransom for three days in September of 1999, eight months after his and Drita's January 1999 wedding. In her entry interview, she never mentioned that anyone had ever tried to kidnap her, but only stated that "they" kidnapped two girls from her village and forced them into prostitution and that she came to the United States because Albania offers no security and no jobs. Even though Sokol stated in the asylum application that men had tried to kidnap Drita and sell her into prostitution in Europe, Drita testified at the hearing that she did not know where the men planned to take her or why they would want to kidnap her. She later testified that she thought they would take her to Italy. When asked why she thought that, she responded that two girls from her village were kidnapped and taken to Italy. When asked how she knew that they were taken to Italy, she said that she heard reports on the television but could explain no further. When questioned specifically about her religion, she stated that she attended an Albanian Catholic Church in Detroit about two to three times a month but could not name the church or give its location.

On the basis of these inconsistencies, among others, the IJ found that the applicants were not credible. Even assuming that some version of their testimony was true, the IJ concluded that they had not demonstrated any past persecution and did not have a well-founded fear of future persecution.

The BIA affirmed the lack-of-credibility finding and stated that even if the applicants were wholly credible, "we would conclude that the respondents failed to demonstrate that any problems they experienced in Albania rose to the level of persecution." JA 5. The BIA agreed that the record did not support the applicants' claim and that they had not established any well-founded fear of future persecution if they return to Albania. This appeal followed.

The Attorney General may grant asylum if an applicant qualifies as a refugee. 8 U.S.C. § 1158(b)(1). A refugee is one who "is unable or unwilling to return to" his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden falls on the applicant to show that he or she meets this definition, *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998), and the applicant has two options in trying to make this showing. First, an applicant may "establish that he or she has suffered persecution," at which point there is a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The government may rebut that presumption by showing that conditions in the applicant's country have changed so "that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A). Second, the applicant may show that he or she has a well-founded fear of future

persecution, 8 C.F.R. § 208.13(b)(2), which "must be both subjectively genuine and objectively reasonable," *Mikhailevitch*, 146 F.3d at 389.

Our standard of review in this area is familiar. We will affirm the BIA's decision on these issues if it is supported by substantial evidence, *see INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), and will reverse only where the evidence in the record "not only supports a contrary conclusion, but indeed *compels* it." *Mikhailevitch*, 146 F.3d at 388 (quotation marks and citation omitted).

In our view, the record amply supports the IJ's adverse-credibility determination. As fairly shown by the inconsistencies noted above, the petitioners have not given a consistent or credible explanation of their reasons for leaving Albania or the events that precipitated their departure. *See Yu v. Ashcroft*, 364 F.3d 700, 703–04 (6th Cir. 2004). Having failed to shoulder their burden of demonstrating eligibility for asylum either at the administrative level or here, they cannot establish reversible error regarding the BIA's decision.

We also agree with the BIA that, even if some version of these events is true, it does not rise to the level of past persecution or establish that the petitioners hold a well-founded fear of future persecution based on their membership in a religious or social group. In claiming that Muslims will kill him if he returns to Albania because he is Catholic, Sokol points to just one incident in which he was kidnapped and released. But even this one incident, which occurred after Sokol lived as a Catholic in Albania for nearly a quarter of a century, appears to have taken place not because of Sokol's faith but because the kidnappers wanted a ransom. And Drita's attempted kidnapping

appears at most to have resulted from random crime, not a targeted effort to harm her because of her religious beliefs.

Finally, having failed to establish grounds to support a grant of asylum, the petitioners necessarily have failed to meet the more rigorous requirements for withholding of removal or protection under the Convention Against Torture.  *See Yu*, 364 F.3d at 703 n.3.

For these reasons, we deny the petition for review.