**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0473n.06
Filed: July 6, 2006

**No. 05-3682**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| LIRI JAUPI, ) | |
| ) | |
| **Petitioners-Appellants,** ) | |
| ) | **ON APPEAL FROM THE** |
| v. ) | **BOARD OF IMMIGRATION** |
| ) | **APPEALS** |
| ALBERTO R. GONZALES, ) | |
| ) | |
| **Respondent-Appellee.** ) | |
| ) | |

**BEFORE: KEITH, BATCHELDER, Circuit Judges and ALDRICH*, District Judge.**

**PER CURIAM**. Petitioner-Appellant Liri Jaupi ("Jaupi") petitions this Court for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, this Court **DENIES** her petition for review.

## I.  BACKGROUND

Jaupi is a 62 year old female, native and citizen of Albania. On May 30, 2001, Jaupi entered the United States on a non-immigrant visa for pleasure. Her visa authorized her to remain in the United States until May 29, 2002.

On May 30, 2002, a year after Jaupi arrived in the United States, she filed an application for asylum. For unknown reasons, her initial application was rejected. Subsequently, she filed another

---

*The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation.

application on September 30, 2002. In her application, she alleged that she was persecuted because of her political beliefs. Jaupi admitted that she was not politically active in Albania. Instead, her derivative claim for asylum was based upon the Albanian government's persecution of her son, Artan Jaupi ("Artan"). Artan fled Albania on December 28, 1998, and filed an application for political asylum in the United States on May 24, 2000. Artan was granted asylum and currently resides in Michigan with his wife and children. Jaupi claims that Artan's political opinions and actions were imputed to her and if she were to return to Albania, she would be "eliminated."

On November 13, 2002, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear charging Jaupi with removability pursuant to sections 237(a)(1)(A) and 212(a)(7)(A)(i)(I) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§ 1227(a)(1)(A) and 1182(a)(7)(A)(i)(I) (2000). The notice alleged that Jaupi overstayed her visa. On March 25, 2003, Jaupi conceded removability and requested relief of asylum, withholding of removal, and relief under CAT.

On March 25, 2003, at her asylum hearing, Jaupi testified that she sought political asylum based on the Albanian secret police's continual harassment. Jaupi testified regarding three main

---

[1]On March 1, 2003, the functions of the former Immigration and Naturalization Service were transferred from the Department of Justice to three agencies (United States Immigration and Customs Enforcement, United States Customs and Border Protection, and United States Citizenship and Immigration Services) to the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). In addition, Title 8 of the Code of Federal Regulations was reorganized and amended to reflect the resulting division of jurisdiction between DHS and the Executive Office for Immigration Review, which includes the immigration courts and the BIA, and which remained an agency within the Department of Justice under the direction of the Attorney General. *See* 68 Fed. Reg. 10349 (March 5, 2003) (available at 2003 WL 724287).

incidents of persecution. On September 19, 1998, the Albanian secret police came to her home while they detained Artan. She alleges that the police "roughed her up" and attempted to sexually assault Artan's wife. After this incident, on November 19, 1998, the police returned to her home to harass her and Artan's wife.

After Artan left the country on December 18, 1998, Jaupi alleges that she began to receive calls from the secret police asking where Artan was and threatening that she would never see him again. On December 30, 1998, at 1:30 a.m. the secret police arrived at her house, searched through the entire house for Artan, and questioned her about his activities until 6:30 a.m.

Between June and July 1999, the police stopped bothering her until Artan published an article criticizing the Albanian government. After the article, Jaupi alleges that the police began to harass her again. She alleges that her house was searched on a daily basis, and that the police both physically and verbally abused her. In telephone conversations with Artan in America, Jaupi never mentioned the confrontations with the police. Further, in September and October 1999, Jaupi went to Macedonia and applied for a visa at the United States Embassy and never mentioned the confrontations with the police.

On February 26, 2004, based on Jaupi's testimony, the IJ found that Jaupi failed to establish past persecution or a well-founded fear of future persecution on any of the statutorily enumerated grounds. The IJ found that Jaupi was not credible. Specifically, the IJ found that Jaupi's testimony was inconsistent with her own asylum application, her son's asylum application, and the current country conditions. The IJ noted four occasions where Jaupi could have notified authorities that she was being politically persecuted: (1) in September and October of 1999 when she visited the U.S.

embassy in Macedonia to apply for a visa; (2) on her way to the United States when the Swiss authorities stopped her; (3) when she arrived in Chicago; and (4) when she asked for an extension on her visa in September 2002. In addition, the IJ found that Jaupi testified inconsistently with her application for asylum.

The IJ also found that, even if Jaupi was credible, she did not show the existence of country conditions that would warrant a well-founded fear of future persecution. The IJ based its findings on the Albanian country reports, which indicated that the country conditions had changed since Jaupi left. The IJ denied her relief for asylum, withholding of removal, and relief under CAT.

On February 25, 2005, Jaupi appealed to the BIA. On May 10, 2005, the BIA summarily affirmed the IJ. On June 7, 2005, Jaupi petitioned this Court to review the BIA's order.

## II.     ANALYSIS

This Court reviews the decision of the IJ directly when the BIA affirms the IJ's decision without an opinion. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005); *Hasan v. Ashcroft*, 397 F.3d 417 (6th Cir. 2005). This Court reviews the IJ's finding that Jaupi failed to establish her eligibility for asylum for substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478 (1992). This Court must affirm the IJ if the IJ's decision was supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Id*. at 481; *see also Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (stating that "the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution.").

This Court may not reverse the IJ's decision merely because it would have decided the case differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (citing *Klawitter v. INS*, 970

F.2d 149, 151-152 (6th Cir. 1992)). Instead, this Court must find that the evidence not only supports a finding of persecution or a well-founded fear of persecution, but compels it. *Elias-Zacarias*, 502 U.S. at 481 n.1. The substantial evidence standard also applies to an agency's credibility findings. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (holding that "[c]redibility determinations are findings of fact" which a court should reverse "only if any reasonable adjudicator would be compelled to conclude to the contrary"). As long as the IJ offers specific and cogent reasons for his adverse credibility finding, this Court must accord substantial deference to that finding. *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005). An adverse credibility finding must be based on issues that go to the heart of the applicant's claim, not irrelevant inconsistencies. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004).

### A. Petition for Asylum

The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a refugee within the meaning of the INA, and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General. INA, § 101(a)(42)(A), as amended, 8 U.S.C.A. § 1101(a)(42)(A); *see also*, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987).

An alien who seeks asylum must establish that she is a "refugee." 8 C.F.R. § 208.13(a) (2003). Section 101(a)(42)(A) of the INA defines a "refugee" as a person unable to return to her country "because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Persecution is an "extreme concept" that has been defined as "the infliction of

suffering or harm" upon those who differ (in race, religion, or political opinion) in a way regarded as offensive. *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004).

### 1.  Past Persecution and Credibility Determination

Jaupi had the burden to show that her fear of persecution was genuine by providing evidence that would support a reasonable fear that of persecution. *Molina-Estrada v. INS*, 293 F.3d 1089 (9th Cir.2002).

The IJ found that Jaupi failed to provide credible, persuasive, and corroborated testimony in support of her claim of past persecution. Specifically, the IJ noted that Jaupi's asylum application omitted critical facts such as the police grabbing her hair and placing her arms behind her back. Further, her asylum application omitted the November 19, 1999, incident where the police came to her house, forced her to sit down and grasped her mouth. The IJ also noted that it was strange that Jaupi never told her son about the police abusing her during their phone calls or in letters.

The main inconsistency was that Jaupi failed to notify the American embassy that she was being persecuted. The IJ noted four occasions where Jaupi could have claimed that she was persecuted: (1) in September and October of 1999 when she visited the U.S. Embassy in Macedonia to apply for passports; (2) on her way to the United States when the Swiss authorities stopped her; (3) when she arrived in Chicago; and (4) when she asked for an extension on her visa in September 2002.

Given the numerous inconsistences and Jaupi's failure to provide corroborating evidence, this Court finds that substantial evidence supports the IJ's finding that Jaupi failed to present credible evidence to support her claim of past persecution.

### 2.    Future Persecution

Absent a showing of past persecution, an applicant does not obtain the benefit of the presumption of a well-founded fear of future persecution and must demonstrate a "reasonable possibility" of suffering future persecution. *See Mikhailevitch*, 146 F.3d at 390*;* 8 C.F.R. § 1208.13(b)(1)(i). An applicant must demonstrate that she will suffer persecution "on account of race, religion, nationality, membership in particular social group, or political opinion" upon removal to her native country, 8 C.F.R. § 1208.12(b)(2)(i)(A), and that "she is unable or unwilling to return. . . [to that country] because of such fear." 8 C.F.R. § 1208(b)(2)(i)(C).

Jaupi argues that the "[BIA] failed to recognize that she had been persecuted in Albania because of her political beliefs and practices" . . . and that "she had been singled out for disparate treatment on account of her political beliefs and practices." Petitioner's Br. at 11. Jaupi admitted that she was never politically active. Her claim of persecution is based on her son's political beliefs and practices that were allegedly imputed to her.

This Court has acknowledged that an applicant for asylum might support her fear of future persecution based upon the alleged persecution of family members." *See generally*, *Akhtar v. Gonzales*, 406 F.3d 399, 405-406 (6th Cir. 2005). In *Akhtar*, the IJ had found that the son of a murdered political activist, who was apolitical, could not establish that he would be persecuted because of his political affiliation or as a member of his own immediate family. *See id*. at 403. The Court stated that "[a]lthough acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant himself or herself, acts of violence against family members do not necessarily demonstrate a well-

founded fear of persecution." *Id*. at 404 (quoting *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th

Cir.2004)). Although relevant, familial status alone cannot support a claim for persecution.

Similarly, the IJ summarily denied Jaupi's derivative claim:

there was no pattern or practice in Albania of persecution of person similarly situated to [Jaupi]. . . of people whose sons have come to the United States and obtained asylum based upon their affiliation with the Democratic Party of Albania or anyone else that is not politically active in Albania, but might be somehow affiliated with or associated with the Democratic Party.

(J.A. 40). The relevant inquiry is not whether there is a pattern or practice of persecuting mothers

of political asylees. The relevant inquiry is whether Jaupi's son's political activities were

imputed to her such that the government subjected her to persecution. As indicated in

*Akhtar,* Jaupi cannot maintain a claim of asylum based on her son's political affiliation

alone. She must connect her son's persecution to her own persecution. She was not able to

establish a connection between Artan's political activities and her own alleged persecution.

Further, the IJ rejected Jaupi's asylum claim based on the Albanian country reports. The

country reports indicated that there were no confirmed cases of political killings by the government,

no reports of politically motivated disappearances, no cases of detainees being held for strictly

political reasons, and no evidence that individuals are targeted for mistreatment on political grounds.

Thus, this Court affirms the IJ's denial of Jaupi's asylum claim.

### B.    Withholding of Removal and Convention Against Torture

A request for asylum in removal proceedings automatically includes a request for

withholding of removal. *See* 8 C.F.R. § 1208.3(b). To establish entitlement to withholding of

removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), Jaupi was required to show a

clear probability of persecution through presentation of evidence establishing that it is more likely than not that she would be subject to persecution if forced to return to her native land. *See Gumbol v. INS*, 815 F.2d 406, 411 (6th Cir. 1987); *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003). The clear probability standard is more stringent, and thus harder for the alien to meet, than the well-founded fear of persecution standard used in asylum cases.

In addition, to qualify for protection under the CAT, Jaupi had the burden to show that it is "more likely than not that . . . she would be tortured if removed to the proposed country of removal." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (quoting 8 C.F.R. § 208.16(c)(2)). In making this assessment, evidence to be considered includes evidence of past torture inflicted upon the applicant, evidence of gross, flagrant, or mass violations of human rights within the country of removal, and other relevant information regarding conditions in the country of removal. 8 C.F.R. § 208.16(c)(3)(i) -(iv).

Since Jaupi could not establish political asylum, she cannot meet the burdens for withholding of removal and relief under CAT. *See Mikhailevitch*, 146 F.3d at 391. She did not show that she was subjected to past torture, she did not come forward with any evidence to dispute the current Albanian country reports, nor do the current country conditions indicate a widespread problem with political persecution. Thus, this Court affirms the IJ's determination that Jaupi was not eligible for relief of withholding of removal or relief under the CAT.

III.    CONCLUSION

Based on the above analysis, this Court **DENIES** Jaupi's petition for review.