NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0697n.06

No. 09-3845

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 12, 2010**
LEONARD GREEN, Clerk

MOUSSAN DIOP,                          )
                                       )
    Petitioner,                        )    ON PETITION FOR REVIEW
                                       )    OF A FINAL ORDER OF THE
v.                                     )    BOARD OF IMMIGRATION APPEALS
                                       )
ERIC H. HOLDER, JR.,                   )
                                       )
    Respondent.                        )

Before: DAUGHTREY, GILMAN, and McKEAGUE, Circuit Judges.

**PER CURIAM.** Petitioner Moussan Diop, a native and citizen of Mauritania, entered the United States from Senegal on May 14, 2000, using a fraudulent passport. Once in this country, Diop filed applications for asylum, for withholding of removal, and for relief under the United Nations Convention Against Torture. Each of those requests was denied, and Diop now seeks review of those decisions, asserting that the immigration judge and the Board of Immigration Appeals (BIA) erred in determining that: (1) his hearing testimony was not credible; (2) he failed to offer sufficient documentary corroboration to support his claims; (3) the government could rely at the administrative hearing on an internal document of questionable trustworthiness; and (4) country conditions in Mauritania had changed for the better since Diop's flight from his homeland. For the reasons detailed in this opinion, we agree with the BIA that the petitioner has not demonstrated his entitlement to the relief he seeks; we thus deny Diop's petition for review.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

According to the administrative record, petitioner Diop, an ethnic Fulani, was born in Mauritania in 1960, was married in that country, and eventually reared four children with his wife. For three years after his marriage, the petitioner said, he worked on his family's farm, eking out a living by raising wheat and tending to cattle, goats, and sheep. Then, according to Diop, in April 1989 white Moor soldiers surrounded the farm, tied the hands of each adult family member behind his or her back, informed them that the soldiers were confiscating the livestock and the land, and told the family that "[t]hey were going to deport [them] to Senegal." When Diop's father voiced objections, the soldiers began beating him with their guns, eventually killing him. The soldiers also beat the petitioner, but he was able to escape the assault with only cuts and multiple scars. The soldiers did, however, force Diop, his wife and children, his mother, and two of his siblings to walk to the river dividing Mauritania from Senegal and then cross into Senegal where the petitioner lived for the next 11 years.

According to Diop's testimony, in 2000, a wealthy man took pity on him, procured a Senegalese passport for him at no charge, and also purchased for the petitioner a one-way airline ticket to New York City from Dakar, Senegal. Diop also said, however, that after arriving in this country, the benefactor took back the passport, leaving Diop without one.

Diop eventually applied for asylum but, more than three years later, an asylum officer denied Diop's application and referred the matter to an immigration judge. After an evidentiary hearing in 2007, during which Diop was the sole witness, the immigration judge also denied relief. In doing so, the immigration judge questioned Diop's credibility, focusing upon his evasiveness during cross-examination, the lack of documentary corroboration for Diop's story, and the inconsistencies between Diop's first and second asylum applications and between his original application and his hearing testimony. Furthermore, the immigration judge concluded that the petitioner failed to demonstrate a well-founded fear of future persecution should he be returned to Mauritania, in large part because Diop's "brother lives in the same town from which the [petitioner] claims his family was evicted in 1989 and apparently has experienced nothing in the way of persecution." Noting that Diop thus failed to meet the burden of proof necessary to establish his eligibility for asylum, the immigration judge also ruled that the petitioner did not satisfy the higher standards required to justify a grant of withholding of removal or a grant of relief under the Convention Against Torture.

Diop timely appealed that decision to the BIA, but the Board dismissed the appeal after first upholding the immigration judge's credibility determination. The BIA noted, however, that even if the petitioner had been found credible and had established that he had been persecuted in the past, "his application for asylum would still be denied as the preponderance of the evidence demonstrates that there has been a fundamental change in circumstances such that [Diop] no longer has a well-founded fear of future persecution

if he is removed to Mauritania." The Board, like the immigration judge, also highlighted the fact that the petitioner's brother "continues to reside in Mauritania in the same town that [Diop's] family lived in prior to their expulsion," apparently without adverse repercussions.

Diop now petitions this court for review of those adverse administrative rulings. Before the immigration judge and the BIA, he argued that he was eligible for asylum, withholding of removal, and relief pursuant to the Convention Against Torture. His brief before this court, however, is limited to a challenge to the denial of his asylum application. We need not, therefore, address any prior claim regarding withholding of removal or relief pursuant to the Convention Against Torture because "issues" adverted to [on appeal] in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004) (citations and quotation marks omitted).

## II. **DISCUSSION**

In addressing Diop's challenge to the denial of his asylum request, we are constrained in the scope of our review. When, as in this case, the BIA issues its own separate opinion after reviewing the decision of an immigration judge, we are required to treat the BIA ruling as the final agency determination. *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). We then review all legal determinations *de novo*, granting substantial deference to the BIA's interpretation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537, and to the Act's accompanying regulations. *See id.* Moreover, we

must sustain the factual findings in an administrative ruling if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Rather, to overturn such a factual determination, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

Resolution of an asylum request involves "a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of [8 U.S.C. § 1101(a)(42)(A)], and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)). *See also* 8 U.S.C. § 1158(b)(1). The term "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). "An applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis

of the original claim." 8 C.F.R. § 208.13(b)(1). That presumption may be overcome, however, if the immigration judge or BIA finds, by a preponderance of the evidence, that:

> (A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion; or
>
> (B) The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i).

In attempting to establish that he was a victim of *past* persecution – and concomitantly, entitled to a presumption that he also bears a well-founded fear of *future* persecution – Diop detailed the horrific experience of seeing armed soldiers round up his family, attack them with the butts of firearms, confiscate their homeland and belongings, beat his father to death, and then force his family to walk with their hands bound behind them to a foreign country. The immigration statutes do not define the term "persecution," but the treatment described by the petitioner clearly rises well above the level of "a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty" that we have held would *not* constitute "persecution." *Mikhailevitch*, 146 F.3d at 390.

Nevertheless, the immigration judge and the BIA agreed that Diop's testimony did not establish that he was subjected to past persecution because of concerns the

administrative decision-makers had with the petitioner's credibility. Some of those concerns appear to have been fully justified; others, possibly less so. We need not tarry over the merits of the challenges to the petitioner's credibility, however, because even if Diop were found to be credible, and thus a victim of past persecution, the evidence in the administrative record does not compel the conclusion that the BIA erred in finding that the petitioner "no longer has a well-founded fear of future persecution if he is returned to his country."

In concluding that Diop lacked a well-founded fear of future persecution if removed to Mauritania, the BIA relied in large part on country reports prepared by the United States Department of State. In particular, the BIA noted that those reports on Mauritania "reflect that the government under which [Diop] was persecuted is no longer in power," "reveal that the new government is attempting to take the country in a new direction and that the new government's human rights record has shown some improvement," and "indicate that most of the people who were expelled or fled during the worst period of abuse have returned to Mauritania with the consent of the government." In fact, the State Department report released in March 2007 chronicles that, in 2006 in Mauritania, "there were no reports that the government or its agents committed arbitrary or unlawful killings," "there were no deaths resulting from police action against demonstrators," "[t]here were no reports of politically motivated disappearances," and many returning refugees "received their original homes, some property, and all or a portion of their land."

Diop argues for the first time in his appellate brief that the political situation in his homeland has recently changed again, this time for the worse. He claims that since the time of his evidentiary hearing, "there has been a coup in Mauritania. Specifically, the former military leader, Mohamed Ould Abdel Aziz[,] is now in power. General Mohamed Ould Abdel Aziz was a military leader prior to the 2005 elections, and a leader in the military during a time when ethnic cleansing took place . . . ." We cannot, however, take judicial notice of facts that are not contained in the administrative record. *See Lin v. Holder*, 565 F.3d 971, 978-79 (6th Cir. 2009).[1]

The immigration judge and the BIA further premised their determination that Diop could not demonstrate a well-founded fear of future persecution on the undisputed fact that the petitioner's brother had remained in Mauritania since 1989 and continued to live in the same town where the family resided prior to its forced expatriation. Because Diop did not indicate that his brother had been harmed, targeted, or discriminated against in any way during the petitioner's own exile, he is unable to convince us that the evidence in the administrative record *compels* a conclusion different than that reached by the BIA.

For these reasons, we DENY Diop's petition for review.

---

[1]Diop may, nevertheless, file with the BIA a motion to reopen the proceedings. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii). In such a filing, he is entitled to highlight new information that establishes the claim he now puts forth.