NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0425n.06

Case No. 13-4053

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Jun 11, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VASELJ DJONAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: SUTTON and COOK, Circuit Judges; MARBLEY, District Judge[*]

COOK, Circuit Judge. Vaselj Djonaj, a citizen of Montenegro, seeks review of a Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his claims for asylum and withholding of removal. We deny the petition.

I.

Djonaj unlawfully entered the United States and applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA"). The Immigration and Naturalization Service denied the application and referred his case to an IJ. Before the IJ, Djonaj renewed his requests and also sought a humanitarian grant of asylum grounded on his past persecution.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Djonaj testified to suffering persecution in the former Republic of Yugoslavia. He described the government targeting him and his family after his brother deserted the Yugoslav army. On four occasions between 1995 and 1998, military and civilian police forces arrested and beat him and his father. During one such incident in 1997, Djonaj suffered kidney damage requiring surgical repair. In addition to his brother's desertion, Djonaj attributed these beatings to his Albanian ethnicity and his helping other Albanians flee Kosovo.

The IJ denied relief under the INA, holding that the government demonstrated a fundamental change in circumstances in Montenegro that rebutted Djonaj's well-founded fear of persecution necessary for asylum. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A). Djonaj also could not show entitlement to humanitarian asylum because he failed to present sufficiently severe past persecution, and he failed to identify any other serious harm that he would suffer if removed to Montenegro. *See* 8 C.F.R. § 1208.13(b)(1)(iii). The BIA affirmed, supplementing the IJ's decision with its own reasoning. Djonaj petitions for review of that decision.

II.

*A. Asylum and Withholding of Removal under the INA*

Djonaj first contests the BIA's change-of-circumstances finding. "Where the [BIA] adopts the IJ's decision and supplements that decision with its own comments, as in this case, we review both the BIA's and the IJ's opinions." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). We review the BIA's finding of a fundamental change in circumstances under a substantial-evidence standard, reversing only if the evidence compels a contrary conclusion. *See Dieng v. Holder*, 698 F.3d 866, 871 (6th Cir. 2012).

Substantial evidence supports the BIA's conclusion. Though Djonaj fears retaliation for his brother's desertion from the Yugoslav army and his own draft evasion, the record reveals that

in 2001, Yugoslavia enacted legislation pardoning military deserters, draft evaders, and conscientious objectors, allowing many draft evaders to return without fear of arrest.

Djonaj also fears persecution on account of his Albanian ethnicity and political activities. But Montenegro's political system fundamentally changed since Djonaj fled Yugoslavia in 2000. Following a national referendum in 2006, Montenegro declared its independence. And, with five seats in the national legislature reserved by law, ethnic Albanians have a role in the government. As Djonaj's own testimony acknowledges, "since 2004, 2005" Montenegro has "changed a lot" so that "they can get in [the] European Union."

State Department reports, "generally the best gauge of conditions in foreign countries," *Dieng*, 698 F.3d at 872, further support the BIA's determination. These reports show that the "government generally respect[s] the human rights of its citizens." The State Department found no record of politically-motivated disappearances, detainees, or prisoners, or of Montenegro's government committing arbitrary or unlawful killings. Indeed, Montenegrin authorities prosecuted former Yugoslav soldiers for killing Albanian civilians and police officers for abusing those in custody.

Though Djonaj asserts that authorities continue to persecute Albanians, he fails to point to any evidence in the record to substantiate this claim. His appellate briefing offers "two . . . current articles" that purportedly substantiate his fear of future persecution. But, as noted by the government, these articles appear nowhere in the administrative record and thus fall outside our review. *See* 8 U.S.C. § 1252(b)(4)(A); *see also Lin v. Holder*, 565 F.3d 971, 978-79 (6th Cir. 2009). Moreover, Djonaj's two sisters live openly in Montenegro without harm. *See Diop v. Holder*, 402 F. App'x 80, 84 (6th Cir. 2010) (per curiam) (holding petitioner's asserted fear of persecution undermined when his family continued to live unharmed in the country of origin).

Because Djonaj fails to show a well-founded fear of future persecution, he cannot satisfy the more stringent standard for withholding of removal. *See Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001) (per curiam).

*B. Humanitarian Asylum*

Djonaj also challenges the BIA's denial of humanitarian asylum. In the absence of a well-founded fear of persecution, a grant of humanitarian asylum requires Djonaj to show "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(A)-(B). Humanitarian relief represents an "extraordinary" remedy available only "in rare instances." *Mbodj v. Holder*, 394 F. App'x 239, 244 (6th Cir. 2010). We review the BIA's denial of humanitarian asylum for an abuse of discretion. *Karomi v. Gonzales*, 168 F. App'x 719, 723 (6th Cir. 2006) (citing 8 U.S.C. § 1252(b)(4)(D) and 8 C.F.R. § 1208.13(b)(1)(iii)).

The BIA acted within its discretion in denying humanitarian asylum because Djonaj's past persecution lacked the severity needed to warrant relief. *Cf. Lleshi v. Holder*, 460 F. App'x 520, 525 (6th Cir. 2012) (listing examples of the requisite severity to include "the case of the German Jews, the victims of the Chinese 'Cultural Revolution', [and] survivors of the Cambodian genocide"). Moreover, Djonaj points to no evidence in the record showing a "reasonable possibility" that he may "suffer other serious harm" upon returning to Montenegro, instead offering only evidence outside of the record that we cannot consider. *See* 8 C.F.R. § 1208.13(b)(1)(iii)(B); *see also Lin*, 565 F.3d at 978-79. In any event, the BIA's finding of fundamental changes in Montenegro belies Djonaj's fears of harm.

III.

We DENY the petition for review.