NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0368n.06

No. 09-4276

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| SOHA FAROUK FAHMY ABDELHALIM, | ) ) ) | **FILED**<br>***Jun 01, 2011***<br>LEONARD GREEN, Clerk |
| Petitioner, | ) ) |  |
| v. | ) ) | **ON APPEAL FROM THE BOARD OF IMMIGRATION APPEALS** |
| ERIC H. HOLDER, JR., Attorney General, | ) ) ) ) | |
| Respondent. | ) | |

Before: **GIBBONS and WHITE, Circuit Judges; and OLIVER, Chief District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner Soha Abdelhalim ("Abdelhalim")

appeals a final order of the Board of Immigration Appeals ("BIA"), affirming the decision of an

Immigration Judge ("IJ"), denying her request for asylum, withholding of removal, and protection

under Article III of the United Nations Convention Against Torture ("CAT"). For the following

reasons, we deny the petition for review.

I.

Abdelhalim was born in Kuwait but is a citizen of Egypt. Her parents live in Amman,

Jordan. After attending medical school in Egypt, Abdelhalim first came to the United States on a

visitor's visa in 1996, but she changed to a student visa when she started studying for the Medical

_____

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern
District of Ohio, sitting by designation.

Licensing Exam ("MLE"). Abdelhalim passed the MLE, but she departed for Jordan in October, 1998, to assist her parents with family matters. In Jordan, she was prevented from working or even obtaining a driver's license, so she returned to the United States—again on a visitor's visa—to "start applying for hospitals, and [to] try to get into a training program." But before she got into any programs, she met her ex-husband. They were married in July 1999, and Abdelhalim gave birth to a son, Anasar, in October 2000. Because her husband was in a residency program, he had a J-1 student visa, and she had a J-2 dependent's visa.

The marriage was troubled. Abdelhalim reports that her ex-husband abused both her and their son verbally and physically. She eventually contacted the police, which—had she not dropped her case—would have caused her ex-husband to face nine months in jail for abuse. The two divorced in 2004, and Abdelhalim was left with the child but no support or legal ability to find work. Eventually, her ex-husband paid her $400 a month in child support, but it was not enough. In the summer of 2007, Abdelhalim gave her ex-husband custody of their son because in her current job as a dental assistant she barely made enough to support herself, let alone a child. Despite not having custody, however, she was able to visit her son whenever she wanted.

Following her divorce, Abdelhalim lost the right to remain in the United States. She applied for asylum on October 1, 2004,[1] and the Department of Homeland Security ("DHS") denied her

---

[1]The regulations require an alien to file for asylum "within 1 year of the date of the alien's arrival in the United States." 8 C.F.R. § 1208.4(a)(2)(i)(A). However, the one-year period may be extended for "extraordinary circumstances." *See* 8 C.F.R. § 1208.5(a)(5)(iv). Both the IJ and the BIA found that Abdelhalim's application was timely in light of the extraordinary circumstance of her divorce. Because the government does not contest the timeliness of Abdelhalim's application, we do not address the question.

application on April 10, 2007. That same day, DHS charged her with removability under § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien who had overstayed her nonimmigrant visa.

At a hearing before the IJ on February 4, 2008, Abdelhalim was the only witness to testify. She explained that she had lived in Egypt as a student, that it was "risky" then, and that now—as a single, divorced woman—it would be particularly dangerous, as she would be without any protection. She also noted that her modern dress and potential employment put her at further risk in Egypt because "everybody is supposed to be wearing the traditional clothes" and "going out and working is not . . . acceptable."

Abdelhalim noted many problems with Egypt. As a student, she heard about women being attacked and raped while walking the streets, and now she fears returning to Egypt because the law does not punish men for attacks against women. Although she could practice medicine in Egypt, she would have to work late nights, which would expose her during her walk home at night to precisely the attacks she feared. Abdelhalim also noted that she has few connections in Egypt now and that the old dean of her medical school has died, thus implying that it will be difficult for her to find employment in Egypt.

Abdelhalim also voiced concerns about her son. She stated both that the environment in Egypt is not safe for him and that her ex-husband could take the boy away from her under Sharia law. She stated that one of his relatives could make the request, a court would order it, and the police would come "grab" her son.

3

When asked if she could return to Jordan instead, Abdelhalim responded in the negative. She explained that Jordan was not her country because her father is Egyptian. Although she was raised in Kuwait, she stated that she could not return there because she is not a Kuwaiti citizen, nor could she obtain a work visa to practice medicine in Kuwait because physicians' salaries are very high in the gulf states and competition for the right to work there is too fierce.

In addition to her testimony, Abdelhalim submitted several articles and the State Department's 2006 *Country Report* for Egypt to buttress her claims regarding torture, rape, opportunities for women, and Sharia law. On torture, the *Report* indicated that torture "is pervasive in Egyptian detention centers," listed numerous political opponents and others who had been tortured while being held in detention centers, and noted that the government failed to investigate instances of police abuse. The *Report* concluded that the Egyptian government's "respect for human rights remained poor." The *Report* noted that spousal rape is permitted and that some 47.4% of Egyptian women have suffered some form of domestic violence. Non-spousal rape, however, is illegal, although some activists stated rape is "not uncommon, despite strong social disapproval." With regard to employment opportunities, the *Report* stated that the law provides equal pay for men and women in public-sector jobs. Women make up 17% of private business owners and hold 25% of managerial positions in the country's four largest banks. Educated women "had employment opportunities, but social pressure against women pursuing a career was strong." And on Sharia law, one of Abdelhalim's articles noted, "despite declarations of the equality of the sexes before God, women are considered inferior to men, and have fewer rights and responsibilities." A State

Department report on Islamic Family Law conceded that, in the event of divorce, the father will always gain possession of a son, although a daughter may be permitted to remain with her mother.

The IJ found Abdelhalim credible, but concluded that the evidence to allow her to remain was weak. The IJ noted that Abdelhalim has not suffered any past persecution and therefore does not enjoy the statutory presumption of a well-founded fear of future persecution. Her fear of returning to Egypt centered on three points: (a) if she took her son to Egypt, her ex-husband could take him away from her under Sharia law; (b) if she goes to Egypt as a single, divorced woman she would likely be a victim of crime, including rape; and (c) as a "modern woman" who does not abide by traditional Muslim dress or other practices, she will face persecution.

The IJ did not find that these arguments justified granting asylum. As to her son, the IJ noted that the boy lives with his father and is a United States citizen. The evidence shows no reason Abdelhalim's son would have to go with her to Egypt; rather, the evidence suggests he would remain in the United States with his father. As to crime, the IJ noted that "becoming a victim of crime generally is not a basis for asylum" because crime affects all people. That women may suffer more from crime than men does not make Abdelhalim "a member of a particular social group." The IJ conceded that women face discrimination in Egypt but did not find any evidence that "modern women" are persecuted. Rather, the IJ found that Abdelhalim's "concerns are not supported by the evidence that she has submitted." The IJ noted that, according to the *Report*, women make up a substantial proportion of professionals and have employment opportunities. The IJ believed that Abdelhalim would have good employment prospects as a physician who has passed the MLE. The IJ conceded that Abdelhalim might have to work late or irregular shifts and thus have to commute

5

home late at night in potentially dangerous circumstances, but the IJ dismissed this as an unconvincing argument by noting that "in many, many locations in the United States . . . this same fear is justified." Moreover, the IJ found there is no reason Abdelhalim could not have a car in which to commute safely. The IJ thus concluded that, although Abdelhalim might subjectively have real fears about returning to Egypt, "the evidence . . . does not support the idea that those fears are objectively reasonable."[2]

The IJ determined that Abdelhalim had not experienced past persecution or presented evidence sufficient to establish a well-founded fear of future persecution on account of the factors enumerated by the INA. Having failed to meet the threshold for an asylum claim, the IJ also found Abdelhalim "necessarily failed to meet the higher standard required to prove her eligibility for relief in the form of withholding of removal under Section 241 of the [INA]." Finally, the IJ noted that she had presented "no evidence of any sort to establish that she would be subjected to torture by, or at the instigation of, or with the acquiescence of the government of Egypt" and thus failed to prove eligibility for withholding of removal under the CAT. The IJ therefore ordered that Abdelhalim be removed to Egypt and that her applications for asylum, withholding of removal, and protection under the CAT be denied.

The BIA reviewed the IJ's decision as to law and fact, affirmed the decision, and dismissed Abdelhalim's appeal. The appeals panel noted that Abdelhalim "was unable to meet her burden of proof for relief or protection." Although the BIA noted potential problems Abdelhalim might face

---

[2]The IJ also noted that Abdelhalim has both parents and siblings in Jordan, but she did not explain why she could not live there. (AR 76.)

in Egypt, it concluded that her fear "remains generally speculative." The BIA found the submitted evidence insufficient to demonstrate that she would be "targeted for persecution on account of a ground enumerated in the definition of refugee found in the [INA]." Therefore, Abdelhalim failed to establish her eligibility for asylum and, having failed that lower standard, necessarily failed the higher burden for withholding of removal. The BIA concluded by finding that Abdelhalim had also failed to meet her burden of proof with respect to the CAT.

The matter now comes before this court.

II.

This court's review is restricted to the administrative record. 8 U.S.C. § 1252(b)(4)(A). Where the BIA affirms the IJ's ruling but adds its own comments, this court reviews both the IJ's decision and the BIA's remarks. *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)).

Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, this court reviews the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). However, to the extent the BIA adopted the IJ's reasoning, this court also reviews the IJ's decision. *Id.; see also Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). Questions of law are reviewed *de novo*, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations. *Khalili*, 557 F.3d at 435. "The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Id.* (internal citations and quotation marks omitted).

"[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Findings of fact are reviewed under the deferential substantial evidence standard and "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 388 (6th Cir. 1998) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Under this standard, this court may reverse if the evidence presented "not only supports a contrary conclusion, but indeed *compels* it." *Id.* (quoting *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992). This court will not reverse simply on the ground that it would have decided the matter differently. *Koliada v. I.N.S.*, 259 F.3d 482, 486 (6th Cir. 2001). Rather, this court will look to the evidence presented to determine if "a reasonable factfinder would have to conclude" that Abdelhalim established her claims for asylum, withholding of removal, or protection under the CAT. *See Elias-Zacarias*, 502 U.S. at 481.

III.

To establish her claim for asylum, Abdelhalim must establish that she is a refugee within the meaning of §101(a)(42) of the INA, which provides, in relevant part:

> 'refugee' means . . . any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42). Abdelhalim bears the burden of proof. 8 C.F.R. § 1208.13(a). To prevail, she must show that the potential harm rises to the level of persecution on account of one of the protected grounds and that the government, or persons the government is unable or unwilling to

8

control, is the source of the persecution. *Pilica v. Ashcroft*, 388 F.3d 941, 950–51 (6th Cir. 2004). "[H]arassment or discrimination without more does not rise to the level of persecution." *Mikhailevitch*, 146 F.3d at 389. An applicant who has suffered past persecution enjoys a rebuttable presumption that she has a well-founded fear of future persecution, 8 C.F.R. § 1208.13(b)(1), but the IJ and BIA found that Abdelhalim did not suffer past persecution, and she does not challenge that finding on appeal.

Abdelhalim's argument that she has a well-founded fear of future persecution centers on law from other circuits and general statements about fear of persecution. This court must uphold the BIA's decision—even if the panel would have decided the matter differently, *Koliada*, 259 F.3d at 486—provided the decision is supported by substantial evidence. As our review of the record indicates, the record in this case does include reasonable, substantial, and probative evidence supporting the IJ and BIA's decisions. Because the decision is supported by substantial evidence, while Abdelhalim has offered no evidence that compels a different conclusion, we deny the petition for review of the BIA decision.

Abdelhalim relies on a Ninth Circuit opinion in support of her argument that she has a well-founded fear of future persecution. The court in that case states: "[d]iscrimination, harassment, and violence by groups the government is unwilling or unable to control can also constitute persecution." *Singh v. I.N.S.*, 94 F.3d 1353, 1359 (9th Cir. 1996). *Singh*, however, is not binding on this court, and

it is directly contradicted by our post-*Singh* precedent that "harassment or discrimination without more does not rise to the level of persecution." *Mikhailevitch*, 146 F.3d at 389.[3]

Abdelhalim's brief is also incorrect in that she argues that "the regulations do not define what constitutes a pattern or practice of persecution," implying that this panel can define persecution however it wishes. We disagree. Abdelhalim's application focuses on crime, and this court has previously held that "[the] fear of crime . . . [is] legitimate but [is] not relevant to [her] fear of future . . . persecution." *Koliada*, 259 F.3d at 488.[4] Abdelhalim offers no compelling argument that the IJ or BIA applied the wrong legal standards.

Abdelhalim focuses much of her brief on an argument that the record facts, as argued and presented to the IJ, show she had a well-founded fear of future persecution. This court, however, must uphold the IJ and BIA's factual findings unless the evidence compels us to hold otherwise. We find that Abdelhalim's recitation of the same facts previously raised before the IJ offers no ground for reversal. Her brief notes that "Egypt's human rights record remains poor" and includes "discrimination and violence against women."[5] But as noted above, discrimination and crime are

---

[3]Abdelhalim also emphasizes that persons other than the government can be the cause of persecution. While this point is true, it applies only to "persons a government is unwilling or unable to control." *Pilica*, 388 F.3d at 950. Because Egypt has laws making crimes against single, divorced, women illegal and these laws are enforced, Abdelhalim's emphasis on persecution by other groups is misleading.

[4]*Koliada* is slightly different from this case in that Koliada's fear was of political persecution, which Abdelhalim is not alleging. However, *Koliada* establishes that a general fear of crime is not relevant to a fear of future persecution, and we see no reason to distinguish that holding here.

[5]Whether the situation in Egypt is still the same today, in light of the recent revolution and changing political circumstances, is unclear. Our current review is limited to the administrative

10

not enough to establish persecution. Additionally, not only is discrimination not persecution, but also the extent of discrimination against women in Egypt is debatable considering that women may be employed and hold a substantial proportion of professional jobs. Moreover, Abdelhalim offers no evidence that any harm that would come to her would stem from the government or groups that the government cannot control; quite the contrary, the crime and harassment she fears is illegal under Egyptian law. The *Report* does cite real violence that women face in Egypt, but that violence is primarily domestic violence against married women. In summary, Abdelhalim has not offered a compelling reason to reverse the IJ and BIA's holding that she failed to show a well-founded fear of future persecution and is not entitled to asylum.

To establish a claim for withholding of removal, Abdelhalim must either establish that "her life or freedom would be threatened in the proposed country of removal on account of [her] race, religion, nationality, membership in a particular social group, or political opinion," 8 C.F.R. § 1208.16(b), or show "a clear probability that [she] will be subject to persecution if forced to return to the country of removal." *Pilica*, 388 F.3d at 951. This burden is "a more stringent burden than what is required on a claim for asylum." *Id.* Abdelhalim argues that she has met this burden "for the reasons set forth herein," but since her argument on appeal is simply a recitation of her initial argument that both the IJ and BIA found insufficient for asylum, it follows that Abdelhalim's appeal does not compel reversal on the withholding of removal claim if reversal is not compelled for the asylum claim.

---

record. 8 U.S.C. § 1252(b)(4)(A).

Abdelhalim's claim for protection under the CAT fails for similar reasons.  To be protected under the CAT, she must show it is "more likely than not that . . . she would be tortured if removed to the proposed country of removal."  *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(2)).  Abdelhalim asserts that she qualifies because "she fears harm that would constitute torture by the Government."  The IJ found, however, that Abdelhalim "has presented no evidence of any sort to establish that she would be subjected to torture by . . . the government of Egypt."  Although the *Report* states that torture does take place in Egypt, Abdelhalim has never explained why she would be the victim of such torture.  She offered no evidence to the IJ, and on appeal, she makes no new argument save broad assertions.  Assertions without evidence or support do not compel us to reach a different conclusion.

IV.

For the foregoing reasons, we deny the petition for review.