NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0202n.06

No. 14-3757

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 12, 2015*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LIAN PENG CHEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW |
| | ) FROM THE UNITED STATES |
| ERIC H. HOLDER, JR., Attorney General, | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| Respondent. | ) |
| | ) |

**BEFORE:** **KEITH, COOK, and DONALD, Circuit Judges.**

**KEITH, Circuit Judge.** Lian Peng Chen, a native and citizen of China, petitions for reversal of the Board of Immigration Appeals's ("BIA") decision denying his application for asylum. Asylum is a process by which a person who is not a United States citizen, but is physically within the United States, may seek protection to remain in the United States because s/he has suffered or fears that s/he will suffer persecution due to race, religion, nationality, membership in a particular social group, or political opinion, if removed from the United States. 8 U.S.C. §§ 1101(a)(42), 1158 (b)(1)(A). Chen filed the required application for asylum for religious protection. The matter was docketed for review. After conducting two hearings in which Chen provided inconsistent testimony regarding matters—both ancillary and pertinent to the decision to grant asylum—the Immigration Judge ("IJ") found that Chen was not credible and denied his application. Chen appealed the IJ's decision, and the BIA affirmed, adopting the IJ's order and providing additional analysis. Chen now appeals the decision of the BIA. Chen

argues that the IJ and BIA failed to consider the totality of the circumstances, testimony, and evidence presented. Chen seeks a remand and grant of his application for asylum. Chen's petition is **DENIED**; we **AFFIRM** the decisions of the IJ and BIA.

## I. BACKGROUND

Chen is a native and citizen of China who was raised by adoptive parents, yet maintained a relationship with his parents. Chen was not raised by his parents because his birth was a violation of China's family planning policy, i.e., one-child policy. Because of his violation, the Chinese government fined Chen's father and had him fired from his job. Chen's mother hid from the Chinese government and ultimately migrated to the United States. Chen's mother applied for, and on April 12, 2000, she was granted, asylum in the United States to protect her from persecution due to China's family planning policy. The Department of Homeland Security ("DHS") appealed.

While DHS's appeal was pending, on September 7, 2000, Chen's mother filed an asylee relative application, which allows an asylee, who has been granted status within the previous two years, to request follow-to-join benefits for unmarried children under twenty-one. She requested that Chen be admitted to the United States. In 2004, Chen's mother's asylee relative application was approved. Chen arrived in the United States on March 17, 2004.

On June 17, 2003—even before Chen entered the United States—the BIA sustained DHS's appeal and vacated the IJ's decision granting his mother's application for asylum. On March 19, 2008, Chen's mother's asylee relative application was reopened and, likewise, denied. On June 18, 2008, Chen was informed of the decisions.

On September 22, 2008, Chen filed a petition seeking asylum, withholding of removal, and Convention Against Torture.[1]  Chen alleged that he feared that if he returned to China he would be arrested due to his religious belief.  In connection with his application for asylum, Chen was interviewed by an asylum officer.

On October 28, 2008, DHS issued a Notice to Appear ("NTA"), which alleged that Chen was removable under 8 U.S.C. § 1227(a)(1)(A) of the Immigration and Nationality Act as an alien not in possession of valid entry documents.

Meanwhile, on March 27, 2009—to respond to the NTA—Chen appeared before an immigration judge in New York; he admitted that all of the allegations in the NTA were true and conceded removability.  This hearing was not in regards to, and did not dispose of, Chen's application for asylum.

On July 21, 2011 and September 22, 2011, an IJ held hearings in Memphis to determine the merits of Chen's application for asylum.  During the hearings, Chen testified that he came to the United States for religious freedom.  However, Chen provided inconsistent testimony regarding matters that were both incidental and critical to his application for asylum.

Chen provided inconsistent testimony regarding the date he first attended church in China.  Chen testified that he first attended church in China in 2003; he stated that he did not attend church prior to 2003.  He later testified that he first attended Church in China in 2001.  Chen confirmed that he told the asylum officer the same conflicting information.  He offered an

---

[1] Chen expressly stated in his reply brief in support of his petition that he "only seeks review of the denial of his application for the relief of [a]sylum . . . ."  Petitioner's Reply Br. at 5.  Our review is limited as requested.

explanation. Chen testified that, although he went to church once in 2001 in China, service was ending when he arrived. Chen testified that he attended his first full service in 2003.

Chen's testimony regarding the dates he first attended church in both China and the United States conflicts with the information that he provided to the asylum officer during the interview conducted in 2008. Then, Chen said that due to his work schedule, he had only attended church *once* since coming to the United States. He testified at the hearing that he attended church in the United States from 2005 and 2006 on *multiple occasions*. Then, he settled that the first time he attended church in China was in 2001, not 2003. At the hearing, Chen testified that the first time he attended church in China was in 2003.

Chen's testimony regarding the frequency that he attended church also conflicts with the information that he provided to the asylum officer. Then, Chen indicated that he had only attended church once since 2004. During the hearing, Chen testified that he attended church weekly from 2005 to 2006. He even stated that his boss drove him to church every Sunday. Because he relocated, he did not attend church again until 2009. When confronted with the information that he told the asylum officer, which was that he attended church in 2008, he changed his testimony and stated that he did attend church in 2008, which was later changed to having not attended church in 2008.

To partially rehabilitate his inconsistent testimony regarding his church attendance, an elder from Chen's church testified that Chen began attending church around 2008 or 2009. Chen provided a certificate of proof that he was baptized on September 13, 2009.

Chen also provided inconsistent testimony regarding where he resided in the United States. Chen testified that he resided in New York, various other states, and Tennessee,

4

respectively, until he settled in Tennessee in 2007. Chen unequivocally stated that he resided in Tennessee in 2008. Chen's 2008 application for asylum, however, lists a New York address as his residence. When confronted with the conflicting information, Chen explained that his application was accurate; he resided in New York in 2008, but forgot.

To support Chen's application for asylum, Chen's father testified. He said that he had personal knowledge that China persecutes Christians. Chen's father testified that he was a Christian who was persecuted by the Chinese government for practicing his religious belief. Specifically, his father detailed that in 2001, he was arrested by the Chinese government and detained and beaten for weeks for attending a Christian church.

On October 14, 2011, the IJ denied all forms of relief and ordered Chen's removal to China. The IJ found that the many discrepancies that existed between Chen's testimony and the evidence that he submitted, along with internal inconsistencies within the testimony itself, were fatal to his relief. The IJ determined that the evidence that Chen offered to corroborate his testimony did not sufficiently rehabilitate his discredited testimony or independently satisfy his burden of proof. Finally, the IJ held that Chen failed to sufficiently explain why he did not provide reasonably available corroborating evidence. Alternatively, the IJ concluded that Chen did not establish a well-founded fear of future persecution based on his religious belief.[2] The IJ then dismissed Chen's application for asylum and reasoned that because Chen had failed to prove his eligibility for asylum, which is a lesser standard, he could not prove eligibility for

---

[2] Chen argues that his father's testimony is demonstrative of his a well-founded fear of persecution. We need not reach this argument because the IJ's credibility determination was dispositive of Chen's application for asylum.

withholding of removal or Convention Against Torture. On November 14, 2011, Chen appealed to the BIA.

On July 2, 2014, the BIA dismissed Chen's appeal, declining to disturb the adverse credibility determination of the IJ. The BIA agreed with the IJ that Chen's testimony and evidence were inconsistent and incredible and had not established an objectively reasonable fear of persecution. The BIA found no error in the IJ's denial of Chen's application for asylum. Chen appealed.

## II. STANDARD OF REVIEW

"Because the BIA adopted and supplemented the IJ's decision, we review the opinion of the IJ in conjunction with the BIA's additional comments and discussion." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010). While this Court reviews legal conclusions made by the BIA *de novo*, *see Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009), factual findings are reviewed for substantial evidence and "'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). The substantial evidence standard is deferential, and "we uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (internal quotation marks omitted).

## III. DISCUSSION

Chen seeks review of the denial of his application for asylum. Asylum may be granted to anyone who is unwilling to return to her/his home country and has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

6

political opinion," 8 U.S.C. § 1101(a)(42), at the discretion of the government. 8 U.S.C. § 1158(b). "Disposition of an application for asylum requires a two-step inquiry: first, whether the . . . [applicant] is unwilling . . . to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . and second, whether the [applicant] merits a favorable exercise of discretion . . . ." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). An applicant need not have suffered actual persecution; a well-founded fear of persecution fulfills the first step. *Id.* The burden rests with the applicant to establish the criteria. *Id.* "The applicant's testimony, if credible, 'may be sufficient to sustain the burden of proof without corroboration.'" *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (quoting 8 C.F.R. § 208.13(a)).

In order to establish the first step, an applicant must show that "he has suffered actual past persecution or that he has a well-founded fear of future persecution." *Mikhailevitch*, 146 F.3d at 389. "Persecution . . . requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id*. at 390. A well-founded fear of persecution is established by showing: (1) that an applicant has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if the applicant were to return to his home country; and (3) that the applicant is unable or unwilling to return to his home country because of such fear. *Pilica*, 388 F.3d at 950. A well-founded fear of persecution has a subjective and an objective component. *Id.* Subjectively, an applicant must fear that he will be persecuted were he to return to his country. *Id.* To satisfy the objective component, an applicant must present

evidence establishing a situation under which his fear is objectively reasonable. *Id.* "A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.'" *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (alteration in original) (quoting *INS v. Cardoza-Fonseca,* 480 U.S. 421, 431 (1987)).

Chen maintains that he met his burden of proof below by presenting evidence that: (1) he is a Christian; (2) his father was persecuted in China due to his Christian belief; and (3) he has a well-founded fear that he would face the same persecution if he were to return to China. This, Chen asserts, sufficiently warrants grant of asylum. Chen is mistaken. As a predicate to asylum, an applicant's testimony before an IJ must be credible. *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) ("An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." (citing *Perlaska v. Holder*, 361 F. App'x 655, 661 & n.6 (6th Cir. 2010))).

An IJ may consider any inconsistency when making a credibility determination. The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, allows triers of fact to consider "any inaccuracies or falsehoods in [an applicant's] statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). The REAL ID Act applies to "applications for asylum, withholding of removal, or other relief from removal filed on or after May 11, 2005." *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). Because Chen's application for asylum

was filed in 2008, it is governed under the REAL ID Act. Accordingly, the IJ properly considered matters both collateral and pertinent to Chen's application for asylum.

The IJ and BIA noted numerous inconsistencies between Chen's testimony and the information he previously provided in support of the merits of his application—including the dates he first attended church in China, the dates he attended church in China and the United States, and how many times he attended church. Because of the many inconsistencies, the IJ found that Chen was not credible. The BIA affirmed. Chen challenges the finding of fact that inconsistencies warranted an adverse credibility determination.

In the Sixth Circuit, an adverse credibility determination is conclusive unless any reasonable adjudicator would be compelled to make a contrary conclusion, *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009), because it is reviewed for substantial evidence. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). That this Court could conceivably make a contrary conclusion is not enough to justify reversal of the IJ's decision; compulsion is required. *See Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005).

The record is replete with inconsistencies in Chen's testimony and interview in support of his application for asylum. For example, Chen told the asylum officer that he first attended church in China in 2003. Then, he changed the date to 2001. By contrast, during the hearing Chen testified that he first attended Church in 2003. As an additional example, in 2008, Chen first told the asylum officer that he had only attended church once since entering the United States. Then, he later testified that he attended church in 2005 and 2006 on multiple occasions.

Chen's testimony is even inconsistent with respect to incidental matters, namely, his residency. Chen testified that he resided in New York, various other states, and Tennessee,

respectively, until he settled in Tennessee in 2007.  Chen unequivocally stated that he resided in Tennessee in 2008.  Chen's 2008 application for asylum, however, lists a New York address as his residence.

The inconsistencies listed above support a conclusion that Chen's testimony was not uniform.  Accordingly, no "reasonable adjudicator would be compelled to conclude," *Karimijanaki*, 579 F.3d at 714, that the IJ's credibility determination and BIA's affirmation are reversible error.

Chen, however, argues that his evidence from an impartial witness who, and a certificate of baptism that, corroborated that he attended church in 2009 in addition to his father's testimony is sufficient to establish his religion and a well-founded fear of persecution even if he is discredited.  But Chen neglects that the decision that he was not credible, alone, defeats his claim. *See Slyusar*, 740 F.3d at 1072.

Chen provided inconsistent testimony that damaged his credibility.  Chen has not presented evidence that would compel a reasonable adjudicator to disagree with the IJ's credibility finding and the BIA's affirmation.  We are thus bound by the decision of the IJ and the additional observations of the BIA.

## IV. CONCLUSION

Accordingly, and for the above-stated reasons, we **AFFIRM**.